# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1883, IN THE SIXTY-
EIGHTH YEAR OF THE STATE.

———————◆———————

### No. 10,727.

### Scott et al. *v.* Hansheer, Treasurer, et al.

Railroad.—*Aid Appropriation.—Complaint to Enjoin Tax.—Objections.—Separate Clauses.—Demurrer.*—In a suit to enjoin the collection of a township tax levied for an appropriation to a railroad company to aid in the construction of its road, it is good pleading to state in a single paragraph of complaint all the facts leading to and resulting in the levy of the tax, and then to set forth in the same paragraph, but in separately numbered clauses or specifications, each several ground of objection to the validity of the tax, and the sufficiency of each clause or specification may be tested by a demurrer for the want of facts.

Same.—*Sufficiency of Petition.—Ambiguity or Uncertainty.*—Mere ambiguity or uncertainty in the phraseology of the petition for an appropriation will not vitiate or avoid the levy of the tax, when it is apparent that no interested party was or could be misled or deceived thereby, or could misapprehend the intention and purpose of the petitioners.

Same.—*Incorporated City Within Township Limits.—Part of Township.—City Voters are Township Voters.—City and Township Taxables.*—For the purpose of a township tax in aid of a railroad, an incorporated city within the limits of a civil township is a part of such township, the qualified voters of the city are voters of the township, and the taxable property within the city is also taxable property within the township and is subject to taxation for township purposes.

SAME.—*Consolidated Company.*—Where an appropriation has been lawfully
made by a township to a railroad company to aid in the construction
of its road, the company acquires such a right to and interest in the
appropriation, and the obligation of the township to pay the same, as,
upon its subsequent consolidation with another railroad corporation,
will pass to and vest in the consolidated company.

From the Laporte Circuit Court.

*J. A. S. Mitchell, W. B. Biddle* and *C. H. Truesdale,* for appellants.

*J. Bradley* and *J. H. Bradley,* for appellees.

Howk, C. J.—We take the following summary of the facts
alleged in the appellants' complaint, in this case, from the
briefs of appellees' counsel:

The appellants allege, in their complaint, that they are the
owners of real or personal property in Center township or
in the city of Laporte, which is an incorporated city within
said township, which is subject to taxation within said town-
ship, and which is assessed for taxation on the tax duplicate for
the year 1882; that on the 21st day of June, 1881, a petition,
signed by ninety-three persons who claim to be freeholders
of said Center township, was presented to the board of com-
missioners of Laporte county, asking said board to make an
appropriation of the sum of $33,500 to aid the Indiana and
Michigan Railroad Company, a corporation organized under
the laws of the State of Indiana, in constructing a railroad
through said township and city, described in the petition as
"commencing on the line between the States of Indiana and
Michigan, at a point on the north line of Springfield town-
ship in Laporte county aforesaid, in the direction of the
town of New Buffalo in the State of Michigan, running
thence in a southerly direction through the townships of
Springfield and Center to and through the city of Laporte,
and thence in a southwesterly direction to LaCrosse in the
southwest part of said county of Laporte," and that said pro-
posed appropriation be levied by taxation on and from said
Center township and donated to said company; and there-

upon the said board of commissioners made an order that the polls be opened at the several voting places in said Center township on the 25th day of July, 1881, and that the votes of the voters of said township be taken upon the subject of making the appropriation prayed for in the said petition; that in pursuance of said order the auditor of said county caused notice to be given by publication in the Herald-Chronicle, a weekly newspaper of general circulation in said county, and published therein for four consecutive weeks before the 25th day of July aforesaid, and by causing printed hand-bills to be posted in ten public places in said township, by the sheriff of said county, three week prior to said 25th day of July aforesaid, which notice is as follows:

## " ELECTION NOTICE.

"Notice is hereby given to the qualified voters of Center township, in Laporte county, in the State of Indiana, that by order of the board of commissioners of said county of Laporte, made at the regular session in June, 1881, of the said board, the polls will be opened on Monday, July 25th, 1881, at the usual places of voting in the several precincts in said township, to take the votes of the legal voters of said township on the subject of said township aiding in the construction of the railroad of the Indiana and Michigan Railroad Company through said Center township and the city of Laporte, by the appropriation by said township of the sum of $33,500 and donating the same to the said railroad company, at least one-half of said amount to be levied by a special tax on the duplicate for the year 1882, and the residue thereof by a special tax on the duplicate for the year 1883.

" The polls at the several voting places to be opened at the same hour, and the election to be conducted by the same officers and governed by the same rules, as are provided by law for the holding and conducting of State and county elections.

" EDWARD J. CHURCH, Auditor Laporte County."

It is further alleged in the complaint that on the day

named in said order and notice the polls were opened at the
several voting places in the said township and in the said city
of Laporte, and the votes of the legal voters of said township
and city were taken on the subject of an appropriation by said
township of the sum of thirty-three thousand five hundred
dollars, and donating the same to the Indiana and Michigan
Railroad Company to aid in the construction of its railroad
through said township and the city of Laporte; that a can-
vass of the votes so taken was made and duly returned, by
which it appeared that the aggregate number of votes given
at the several voting places in favor of said appropriation and
donation was one thousand three hundred and twenty-nine,
and the aggregate number of votes given against said appro-
priation and donation was fifty-one, making a majority of
twelve hundred and seventy-eight votes in favor of said ap-
propriation and donation. It is further alleged that after-
wards, at their session of June, 1882, the board of commis-
sioners again had the matter under consideration, and made
an order that the sum of sixteen thousand seven hundred and
fifty dollars (being one-half of the amount of said appropria-
tion) be levied and assessed as a special tax on the duplicate
for the year 1882, and that the auditor assess the same *pro
rata* on all the property, real and personal, of the several
owners, liable for taxation for State and county purposes in
said Center township, on the tax duplicate for the year 1882,
and that the same be collected as other taxes are collected,
and that the remaining one-half of said appropriation be
levied and assessed in like manner on the tax duplicate for
the year 1883; and that in pursuance of said order the au-
ditor of said county had entered said tax upon the tax dupli-
cate of the county *pro rata* against all the property, real and
personal, listed and returned for taxation in said Center town-
ship and in the city of Laporte, and that the duplicate has
been placed in the hands of the appellee Herman Hansheer,
county treasurer, who is proceeding to and will collect the
said tax.

The appellants allege that said tax is illegal and void, and they set out in five separate special clauses or specifications of the grounds upon which they claim it to be illegal, as follows:

"*First.* That the petition does not state facts sufficient to authorize said board of commissioners to order or in any manner authorize the appropriation, for the aid of the said railroad company, under any law of this State; that it is prayed therein that an appropriation for the said railroad company be made by the board of commissioners of said county of Laporte; and that the said petition is not, and does not purport to be, signed by one hundred freeholders of said county, and it is not alleged therein that said county borders on the line of the State, or on a river forming a State boundary.

"*Second.* That the order of said board of commissioners, made on the 21st day of June, 1881, for the holding of an election on the 25th day of July, 1881, for the purpose of taking the votes of the voters of the said Center township, upon the subject of an appropriation of money to be made by said Center township, was not in accordance with the prayer of said petition, and there was no petition before said board therefor, and said order was wholly without authority of law.

"*Third.* That said election was illegal, in that it was held within, and embraced the votes of the voters in, the incorporated city of Laporte, within the territorial limits of said Center township, as well as the votes in said township not within said city.

"*Fourth.* That on the 21st day of June, 1881, the date of the filing of said petition, there was and is now, situated within the territorial limits of said Center township, the city of Laporte which was and now is duly incorporated under the laws of this State, and then contained a population of about eight thousand, and the legal voters therein largely exceeded those of the township without the city; that within the corporate limits of said city, there was property real and personal, which, for the year 1880, was valued and assessed

on the tax duplicate, delivered to the treasurer of the county of Laporte for said year, at $2,260,730, and the taxable property of said township, on said tax duplicate for the year 1880, without the limits of said city, amounted only to $865,-385. The property within the limits of said city was assessed and designated upon said duplicate, and upon all other duplicates since delivered to said treasurer, as property in the city of Laporte, and separate and apart from that without said city limits, and the property without such city limits only appearing on said duplicate as the property within said Center township; wherefore the appellants averred, that said sum of $33,500, so ordered to be appropriated by said board of commissioners, exceeded two per cent. of the taxable property of said Center township, on the tax duplicate of the county, so delivered to the treasurer of the county for the year 1880, the year preceding the filing of said petition.

"*Fifth.* That on the 16th day of July, 1881, the board of directors of said Indiana and Michigan Railroad Company entered into an agreement with the board of directors of the Chicago and West Michigan Railroad Company, the Grand Rapids, Newaygo and Lake Shore Railroad Company, and the Grand Haven Railroad Company, corporations organized under the laws of the State of Michigan, and owning continuous and connected lines of railroad within said State, and connecting with the railroad of the Indiana and Michigan Railroad Company,—said lines of railroad not being parallel lines, or lines diverging and converging, and conterminous; by the terms of which agreement it was agreed to merge the stock, franchises and property of the said several companies, into the stock, franchises and property of a new corporation to be known as the Chicago and West Michigan Railroad Company; that at the time of executing the said agreement, the following statute of the State of Michigan, on the subject of the consolidation of railroad companies within the State, with such companies without the State, was in force:

"'Sec. 50. Any railroad company, in this State, forming a

continuous or connected line with any other railroad company, may consolidate with such other company, either in or out of this State, into a single corporation : *Provided*, That no such companies having parallel lines, or lines diverging and converging, but being conterminous, shall be permitted to consolidate themselves into one corporation. The directors of said two or more corporations may enter into an agreement, under the seal of each, for the consolidation of said two or more corporations, prescribing the terms and conditions thereof, the mode of carrying the same into effect, the name of the new corporation, the number of the directors thereof, which shall not be less than seven nor more than thirteen, the time and place of holding the first election of directors, the number of shares of capital stock in the new corporation, the amount of each share, the manner of converting the shares of capital stock, in each of said two or more corporations, into shares in such new corporation, with such other details as they shall deem necessary to perfect such consolidation of said corporation ; and such new corporation shall possess all the powers, rights and franchises, conferred upon such two or more corporations, and shall be subject to all the restrictions and perform all the duties imposed by the provisions of their respective charters or laws of organization, not inconsistent with the provisions of this act. Such agreement of the directors shall not be deemed to be the agreement of the said two or more corporations until after it has been submitted to the stockholders of each of said corporations separately, at a meeting thereof to be called as aforesaid, and has been sanctioned by such stockholders by the vote of a majority in interest of the stockholders present at such meeting, in person or by proxy, and voting, each share of capital stock being entitled to one vote ; and when such agreement of the directors has been so sanctioned by each of the meetings of the stockholders separately, after being submitted to each in the manner above mentioned, then such agreement of the directors shall be deemed to be the agreement of the said two or more corporations.

"'Sec. 51. Upon making the agreement, mentioned in the preceding section, in the manner required therein, and filing a duplicate or counterpart thereof in the office of the Secretary of State, the said two or more corporations, mentioned or referred to in the said section, shall be merged in the new corporation provided for in such agreement, to be known by the corporate name therein mentioned, and the details of such agreement shall be carried into effect, as provided therein.'

" That under the authority of said statute of Michigan and of the statutes of Indiana on the same subject, and in pursuance of said statutes, the said several boards of directors entered into said agreement, subject to the sanction of the stockholders of said several corporations; that, after due notice thereof, the stockholders of the said several companies, organized under the laws of Michigan, held meetings on the 28th day of September, 1881, and the stockholders of the said Indiana and Michigan Railroad Company, after like notice, held a meeting on the 29th day of September, 1881, at each of which stockholders' meetings resolutions were adopted sanctioning and fully ratifying the said agreement for consolidation; that afterwards, to wit, on the —— day of October, 1881, a duplicate of said agreement, resolutions and other proceedings connected therewith was filed in the office of the Secretary of State of the State of Michigan, and also, on the 5th day of October, 1881, a like duplicate was filed in the office of the Secretary of State of the State of Indiana, and thereupon, in pursuance of said agreement, the said Indiana and Michigan Railroad Company surrendered up her franchises, rights and property to the said Chicago and West Michigan Railroad Company, and the stockholders of the said Indiana and Michigan Railroad Company surrendered their stock in said corporation to said Chicago and West Michigan Railway Company, and the directors and officers of said Indiana and Michigan Railroad Company surrendered and abdicated their several trusts, and said Indiana and Michigan Railroad Company has not, since the said 29th

day of September, 1881, when said agreement of consolidation was ratified, and by reason thereof, had any existence in fact or law, and said several corporations became merged into the said Chicago and West Michigan Railway Company; and the plaintiffs say, that should said tax be collected, there is not and can not be any corporation or person who will be entitled to receive said proposed donation or any part thereof."

The prayer of the complaint was, that the appellees and each of them, and their respective successors in office, might be perpetually enjoined from demanding or attempting to collect the aforesaid tax, or any part thereof, and for all other proper relief.

The appellees' demurrers to each of the five clauses or specifications, above quoted, for the alleged want of sufficient facts therein to constitute a cause of action against them, were sustained by the court, and to these rulings the appellants excepted. They declined to amend or plead further, and judgment was rendered against them for appellees' costs.

Errors are assigned here, which call in question the decisions of the court below, in sustaining the appellees' demurrers to each of the five clauses or specifications of the appellants' complaint. The questions presented, or intended so to be, are the sufficiency in law of these clauses, specifications or paragraphs, to show that the proceedings in relation to the levy of the railroad tax in Center township were illegal, and that the collection of the tax ought not to be enforced.

In *Mustard* v. *Hoppess*, 69 Ind. 324, this court approved of the practice, pursued in this case, of stating in a single paragraph of complaint the proceedings had in relation to the levy of the tax, and then setting forth, in separate clauses or paragraphs, the several grounds of particulars in which it might be claimed that the assessment of the tax was illegal and void, and the reasons why the collection of such tax ought not to be enforced. It was there held that, in such a case, the sufficiency of each separate clause or paragraph might be tested by a demurrer thereto, for the want of facts,

as fully and to the same extent as if all the facts had been repeated in each clause or paragraph. See, also, *Sheetz* v. *Longlois*, 69 Ind. 491.

In this case we will consider and decide the several questions arising under the errors assigned, in the same order they have been presented and discussed by appellants' learned counsel, in their able and exhaustive arguments, oral and printed. The first and second paragraphs are considered together by counsel, and upon these the only point made is that the petition filed prayed for an appropriation by the county board, and not by Center township. We do not think that this objection to the validity of the tax assessment is well taken or can be sustained. When once the constitutionality of the legislation of this State, authorizing a civil township to aid in the construction of a proposed railroad by self-imposed taxation, was firmly settled by the decisions of this court, it then became the duty of the courts, in furtherance of the objects to be accomplished thereby, to construe liberally the provisions of the statute and the proceedings had thereunder, and in attempted compliance therewith. It was impossible, as it seems to us, for the county board of Laporte county, or the voters of Center township, to misapprehend or mistake the meaning and intention of the petitioners in the language used in their petition. It is true that the intention and purpose of the petitioners were not so clearly expressed as they might, and, doubtless, would have been, had the petition been drafted by counsel learned in the law. It does not appear, however, that the county board, or Center township, or the qualified voters of such township, were misled or deceived by the ambiguous or uncertain phraseology of the petition; but, on the contrary, it is apparent, we think, that no interested party was thus misled or deceived, in respect to any of the matters complained of. In *Wilson* v. *Board, etc.*, 68 Ind. 507, in considering an objection to the petition somewhat similar to the one here made, this court

said: "The petition is loosely worded, and was not drawn with legal accuracy and precision; but it seems to us that the object and purpose of the petitioners could not be misunderstood by any one, and certainly were not misunderstood by the county board, as is clearly shown by the record of their proceedings on said petition." On the point under consideration see also the cases of *Faris* v. *Reynolds,* 70 Ind. 359, and *Goddard* v. *Stockman,* 74 Ind. 400.

Our conclusion is that the court committed no error in sustaining the appellees' demurrers to the first and second clauses or paragraphs of the appellants' complaint.

In the third clause or paragraph of their complaint, the appellants alleged that the election, upon the question of the railroad-aid appropriation, "was illegal, in that it was held within, and embraced the votes of the voters in the incorporated city of Laporte, within the territorial limits of said Center township, as well as the votes in, said township not within said city." We are clearly of the opinion that the election was not illegal upon the ground, or for the reason stated in the third clause or paragraph of the complaint. An incorporated city within a civil township is a part of such township. A citizen of the city is a citizen of the township within which such city lies, and he has all the rights and is subject to all the burthens, in regard to township matters, of any citizen of the township who is not a citizen of such city. If he be a qualified voter, he can vote at any township election, and is eligible to any township office. It was expressly held by this court in *Reynolds* v. *Faris,* 80 Ind. 14, that for the purpose of a tax in aid of a railroad, an incorporated town, within a township, is a part of such township, and we know of no sufficient reason for holding that, for the purpose of such a tax, an incorporated city is not a part of the civil township within whose boundaries such city lies. Therefore the demurrer to the third clause or paragraph of the complaint was correctly sustained.

What we have said in considering this third clause is practically decisive of the question presented upon the fourth clause or paragraph of the complaint, adversely to the appellants. All taxable property within the boundaries of Center township, as well such property as was within the corporate limits of the city of Laporte as that which was not within the city limits, is liable to township taxation for the purpose of the appropriation by Center township in aid of the proposed railroad. Therefore the fact that the amount of the appropriation voted was in excess of two per centum of the taxables, outside of the city limits, when it further appeared that such an amount was less than two per cent. of the entire taxables of the township within and without the city limits, did not vitiate or avoid the tax in aid of the appropriation. *Reynolds* v. *Faris, supra; Irwin* v. *Lowe,* 89 Ind. 540; *State* v. *Troth,* 34 N. J. L. 377. There is no error, therefore, in the ruling of the circuit court in sustaining the demurrer to the fourth clause or paragraph of the complaint.

In the fifth and last clause or paragraph of their complaint the appellants seek to enjoin the collection of the tax upon the grounds that, after the appropriation was voted in aid of the designated railroad, the railroad company had consolidated, under and in conformity with the laws of this State and the State of Michigan, with certain railroad corporations of the latter State; that, by force of such consolidation, the railroad company, to which the appropriation was voted, ceased to exist from and after the 29th day of September, 1881; and that, since the day last named, there was and had been no railroad company in existence authorized by law to take and receive such appropriation. It is claimed, on behalf of the appellants, that, at the time of the consolidation, the railroad company theretofore existing had no right to, or interest in, the appropriation voted, which would pass to or vest in the consolidated company. This claim is founded, we apprehend, upon repeated decisions of this court to the ef-

Scott *et al.* v. Hansheer, Treasurer, *et al.*

fect that where an appropriation has been voted to aid in the construction of a railroad the railroad company will acquire no right or interest in the appropriation, which it can enforce or protect by suit in its own name, until, at least, the money appropriated has been collected. These decisions had their origin in the constitutional provision which forbade a county to "subscribe for stock in any incorporated company, unless the same be paid for at the time of such subscription." Section 198, R. S. 1881. It will be observed that no such prohibition, in regard to townships, is to be found in the Constitution. See *Bittinger* v. *Bell*, 65 Ind. 445, on page 457.

In *Board, etc.,* v. *State, ex rel.,* 86 Ind. 8, after a careful examination of the statutory provisions in relation to township appropriations in aid of railroads, this court said: "When an appropriation of not exceeding two per centum of the value of the taxable property of the preceding year has been lawfully made, such an appropriation becomes a binding obligation upon the township, from which it is not discharged by any subsequent shrinkage in the value, or the destruction of any part, of its taxable property."

In such an obligation of the township, we are of opinion that the railroad company to which the appropriation has been lawfully made acquires such a right and interest as, upon its future consolidation with other railroad corporations, will pass to and vest in the consolidated company. This is so, we think, whether the railroad company to which the appropriation was voted did or did not, by force of the consolidation, cease to exist as a corporation for every purpose.

Our conclusion is that the complaint in this case did not state facts sufficient to entitle the appellants to an injunction as prayed for, and that the demurrers thereto were correctly sustained. The judgment is affirmed, with costs.

Filed March 7, 1884.