Jussen *et al. v.* The Board of Commissioners of Lake County *et al.*

Filed March 25, 1884.

----

No. 11,282.

JUSSEN ET AL. *v.* THE BOARD OF COMMISSIONERS OF LAKE COUNTY ET AL.

PRACTICE.—*Striking out Names of Defendants.—Error.*—There is no available error in overruling the plaintiff's motion to strike out the names of defendants, upon the alleged ground that they have no interest in the subject of the suit, for, in that event, their presence as parties could not prevent the plaintiff from obtaining such relief, as he might be entitled to, against the other defendants.

BOARD OF COMMISSIONERS.—*Special Session.—How and When Called.—Notice and Service.—Decision of County Auditor Final.*—Under sections 5737 and 5738, R. S. 1881, special sessions of boards of county commissioners may be called by the county auditor whenever the public interests require it; and the county auditor or other county officer named, in their order, must determine whether or not a special session is required by the public interests, and whether or not an emergency exists requiring a shorter notice of such special session than six days, and, if so, what notice shall be given; and how and by whom it shall be served; and

upon these points the decision of such auditor or other county officer is final, and can not thereafter be questioned, annulled, set aside, or held void and of no effect.

SAME.—*Railroad Aid.*—*Petition for Appropriation.*—Under the provisions of section 4045, R. S. 1881, a petition for an appropriation to aid in the construction of a railroad may be presented to the board of commissioners of the county, " at any regular or special session thereof."

RAILROAD.—*Petition for Appropriation.*—*Uncertainty or Ambiguity.*—The levy of a tax to aid in the construction of a railroad is not vitiated, nor will it be avoided, by any uncertainty or ambiguity in the language of the petition for the appropriation, when it appears that no one was or could be deceived thereby, and that the intention of the petitioners could not be misapprehended.

SAME.—*Sufficiency of Petition.*—*Subscription or Donation.*—The petitioners for an appropriation to aid in the construction of a railroad may designate, in their petition, whether the amount appropriated shall be donated to the railway company or invested in its capital stock, but their failure to make such designation will not vitiate the petition or any of the proceedings had thereon.

SAME.—*Consolidated Company.*—The fact that the petition asks an appropriation to a certain railway company, " or its successor by consolidation," does not invalidate the petition or the proceedings thereon ; but in such case, in the event of consolidation, the right to the appropriation will pass to and vest in the consolidated company.

APPEAL.—*County Commissioners.*—*Trial de Novo.*—*Practice.*—*Supreme Court.* —An appeal from the orders of a county board levying a tax in aid of a railroad goes to the circuit court for a trial *de novo,* and not for the correction of errors ; and the action of the court in striking out objections filed there, in the nature of errors assigned, affords no grounds for the reversal of the judgment by the Supreme Court.

From the Lake Circuit Court.

*J. Kopelke,* for appellants.

*J. B. Peterson* and *J. B. Cohrs,* for appellees.

HOWK, J.—The record of this cause shows that on the 19th day of April, 1881, a petition signed by more than twenty-five citizens and freeholders of Hobart township, in Lake county, was presented to the board of commissioners of such county, praying therein that an appropriation of ten thousand dollars might be made to aid the "New York and Chicago Railway Company " (or its successor by consolidation), a corporation duly organized under the laws of this State, to con-

struct its railroad in and through said Hobart township. Upon the presentation and submission of this petition the board of commissioners of Lake county then and there found that the petition was signed by more than twenty-five free-holders of Hobart township, that the said railway company was duly organized under the laws of this State, that the prayer of such petition ought to be granted, and that an election ought to be ordered and held in such township as prayed for in the petition. Thereupon, on the same day, the county board ordered that the polls be opened at the usual voting place in Hobart township for the purpose of taking the votes of the legal voters of such township, on May 30th, 1881, on the subject of such appropriation to said railway company, or its successor by consolidation, to aid in the construction of its proposed railway in and through Hobart township. .

The election was held accordingly, and a proper canvass of the votes, subsequently had, showed a majority of twenty-eight votes in favor of such railroad appropriation. Thereafter, at the regular June session, 1882, of such board of commissioners of Lake county, when the board was about to take action on the aforesaid petition and the levy of the tax therein prayed for, thirty named persons and the Pittsburgh, Fort Wayne and Chicago Railroad Company, representing themselves to be taxpayers of Hobart township, appeared by their attorneys and filed their objections in writing to the levy of such tax. But the board of commissioners then and there overruled such written objections, and ordered that a tax of one per centum be levied on all the taxable property within such township, to aid the said railway company in the construction of its proposed railroad in and through Hobart township.

The transcript further shows that on the 5th day of July, 1882, an appeal bond was taken and approved by the auditor of Lake county, executed by Edmund Jussen, Valentine Behneke, Valentine Fabian, Louis Yoergler and Ernst Passon, with William Sholler as their surety, and payable to

the board of commissioners of Lake county, and the New York and Chicago Railway Company, and an appeal taken by the principals in such bond from the order of the county board to the circuit court of the county. Afterward, on the 7th day of July, 1882, the Pittsburgh, Ft. Wayne and Chicago Railway Company filed its appeal bond payable to the county board, to Hobart township, to the New York and Chicago Railway Company, and to each and all of the petitioners for such appropriation, and took an appeal from the order of the county board to the circuit court. In some manner, probably by the mistake of the clerk, these two appeals seen to have been erroneously docketed in the circuit court as one and the same cause. Section 5777, R. S. 1881.

Afterwards, at the April term, 1883, of the court below, the Pittsburgh, Ft. Wayne and Chicago Railway Company, by its counsel, dismissed its appeal. The effect of this dismissal was, of necessity, to dismiss from the record and from court all the defendants in the appeal of such railway company, *except* the board of commissioners of Lake county and the New York and Chicago Railway Company, who were also defendants in the appeal of Edmund Jussen *et al.* Thereafter, the defendants' written motion to strike out the objections in writing, filed by the appellants before the county board, to the levy of the tax voted for, was sustained by the court. Thereupon, the court rendered judgment against the appellants for the appellees' costs.

In this court, the first error assigned by appellants is the overruling of their motion to strike out the names of all the parties defendants from the docket and records in this cause, for the want of interest in the subject-matter thereof, except Hobart township. The only defendants named by the appellant, in their appeal from the order of the county board to the circuit court, were the board of commissioners of Lake county and the New York and Chicago Railway Company. The appellants did not make Hobart township a party defendant in their appeal. It is true that after they had taken

their appeal, a separate appeal was taken from the same order of the county board by the Pittsburgh, Ft. Wayne and Chicago Railway Company, in which latter appeal Hobart township and the petitioners for the levy of the tax were named as parties defendants, in addition to the county board and the New York and Chicago Railway Company. It is true, also, that the two appeals seem to have been docketed in the circuit court as one appeal, but they were never consolidated by any order of the court appearing in the record. When, therefore, the Pittsburgh, Ft. Wayne and Chicago Railway Company dismissed its appeal, of course, Hobart township and the other defendants therein, who were not defendants in the appellants' appeal, were dismissed from the docket and records of this cause. If the court had sustained the appellants' motion to strike out, they would have found themselves, after such dismissal, in the anomalous position of waging a lawsuit without any defendants thereto.

This court has often held that there is no available error in overruling a motion to strike out part of a pleading, for the reason that, at most, it can only leave surplusage in the record, which does not vitiate that which is good. *City of Crawfordsville* v. *Brundage*, 57 Ind. 262; *Doss* v. *Ditmars*, 70 Ind. 451; *Morris* v. *Stern*, 80 Ind. 227. So, also, it may be said that the error, if such it be, in overruling the plaintiffs' motion to strike out the names of defendants, upon the alleged ground that they have no interest in the subject of the suit, is at most a harmless error, for the reason that the presence of superfluous defendants in the suit can not prevent the plaintiff from obtaining such relief, as he is entitled to, against the other defendants.

The next error complained of is the sustaining of appellees' motion to strike out the objections and exceptions filed by the appellants, before the county board, to the levy of the tax. These objections and exceptions were twelve in number, and will be considered and passed upon in their enumerated order. It is first objected that the special session of the county

board, in April, 1881, at which the petition for the appropriation was presented by the freeholders of Hobart township, "was irregular and convened without any authority of law." This objection is itself objectionable, for the reason that it failed to point out wherein the special session was irregular, and without authority of law. Waiving this point, however, we learn from the brief of appellants' learned counsel that the special session of the county board was illegal, and its acts were consequently void, for the following reasons:

1. Because the members of the county board were served with written notices of the special session by the auditor in person, and not " by summons issued to and served by the sheriff; " and,

2. Because there was no emergency existing requiring the county board to meet in special session, upon shorter notice than " at least six days."

The statutory provisions in relation to special sessions of county boards have been in force, without change, since October 10th, 1863, and have often been the subject of judicial comment and construction. Sections 5737 to 5739, R. S. 1881. In *Wilson* v. *Board, etc.,* 68 Ind. 507, the proper construction of these statutory provisions was fairly presented for our consideration. After quoting the sections of the statute, the court there said:

" Under these provisions, it will be seen that the county auditor is clothed with the power to call 'special sessions' of the county board, whenever the public interests require it, of which special sessions at least six days' notice must be given, unless, in the opinion of the auditor, an emergency exists requiring a shorter notice, and in that case the auditor may fix the time at his discretion. It seems to us that the General Assembly of this State, in and by these statutory provisions, have committed to the county officers named in said act, and first to the county auditor, the discretionary right, power and duty to determine finally and conclusively, in each particular case, these three questions:

" 1. Whether the public interests require a special session of the board of commissioners;

" 2. Whether the facts of the particular case will authorize and justify the giving of at least six days' notice of such special session; and,

" 3. If not, and in the opinion of such county auditor first, or other officer named in their order, an emergency shall exist requiring a shorter notice, what notice shall be given, and when such special session shall begin.

" When the county auditor, or other county officer acting as authorized by the provisions of the statute, shall have considered, passed upon and determined any or all of these three questions, we think that the decision of such auditor or other officer, in regard thereto, is and ought to be final; and that such decision can not thereafter be questioned, annulled, set aside or held void and of no effect. * * * * * Whatever notice the auditor, or other acting county officer, may give of such special session, and however and whenever such notice may be served, it seems to us that those matters become and are unimportant and immaterial, if, pursuant to such notice so served, the board of commissioners actually meet at the time indicated therein, in special session." And to the same effect, substantially, are the following cases: *Oliver* v. *Keightley*, 24 Ind. 514; *Board, etc.,* v. *Brown,* 28 Ind. 161.

· The board of commissioners of Lake county was lawfully convened in special session on the 19th day of April, 1881; and the petitioners for the appropriation, finding the board thus in session, presented their petition, as they had the right to do. In section 4045, R. S. 1881, in force since March 8th, 1879, the presentation of such a petition to the board of commissioners of any county, " at any regular or special session thereof," is expressly authorized, and no previous notice is required to be given of the time or term at which such petition will be presented. This is the point of difference between such cases as the one in hand and that of *City of Vincennes* v. *Windman,* 72 Ind. 218, which is cited and relied upon

by appellants' counsel. The proceedings in the case cited were governed by statutory provisions widely different from those under which the proceedings in this case were had; so much so that the doctrine of the former case can not be regarded as at all applicable to the case we are now considering.

The *second* written objection of the appellants is that " the petition is irregular, insufficient and not in accordance with the laws of the State." This objection is too defective for any purpose, or to present any question for decision.

The *third* objection is as follows: " The said petition is irregular, defective and insufficient, in this, that it does not ask the township to make the appropriation, nor that the said sum of money be raised by taxation on the taxable property of said township, as by law required, but it asks that the board of commissioners shall appropriate said sum of money for the purpose aforesaid."

In *Wilson* v. *Board, etc., supra,* the sufficiency of the petition was objected to because it did not ask the county board to appropriate any sum of money to aid in the construction of the railroad through the township. The court said : " The petition is loosely worded, and was not drawn with legal accuracy and precision ; but it seems to us that the object and purpose of the petitioners could not be misunderstood by any one, and certainly were not misunderstood by the county board, as is clearly shown by the record of their proceedings on said petition." In *Scott* v. *Hansheer,* 94 Ind. 1, the objections to the petition were substantially the same as the appellants' *third* objection in this case; and it was held that the petition should be liberally construed, and where its prayer was for an appropriation by the county board, instead of by the township, it would still be good as such prayer could not mislead the voters. To the same effect are the cases of *Goddard* v. *Stockman,* 74 Ind. 400, *Bish* v. *Stout,* 77 Ind. 255, and *Hilton* v. *Mason,* 92 Ind. 157. Appellants' *third* objection to the appropriation in this case, therefore, is not well taken.

Their *fourth* objection is that "the petition does not state whether the money, so to be appropriated, shall be donated to, or invested in, the capital stock of the railway company." There is nothing, we think, in this objection. Doubtless, the petitioners were at liberty to designate, if they chose so to do, whether the amount of the appropriation prayed for should be donated to the railway company, or invested in its capital stock; but their failure to make such designation would not vitiate the petition, or any of the proceedings had thereon. *Petty* v. *Myers*, 49 Ind. 1 ; *Bittinger* v. *Bell*, 65 Ind. 445; *Faris* v. *Reynolds*, 70 Ind. 359.

Appellants' *fifth* objection is as follows: "The petition is irregular in this, that it asks that the sum of money be appropriated to the New York and Chicago Railway Company, 'or its successor by consolidation,' and in that it does not name such successor or successors, and does not set forth that such successor or successors are duly organized as a company, or companies, under the laws of the State of Indiana."

This objection is not well taken. In *Faris* v. *Reynolds,* *supra,* the petition asked that the appropriation be paid to the railroad company, "or assigns," and it was claimed on this ground that the petition was void and the tax illegal ; but it was held that the petition was not thereby invalidated. The court said: "It is not seen that any one is injured by the assignment of the claim. * * * * If the assignment is valid, the taxpayer is not injured. If it is invalid, it harms no one, and furnishes no reason why the tax should not be collected. There is no foundation in these objections." So, in the case at bar, what possible difference can it make to the objectors whether the appropriation be paid to the New York and Chicago Railway Company, or to its successor by consolidation? Or, how are the objectors injured by the failure of the petitioners to name the successor of such railway company, when, as yet, it had no successor by consolidation, and the successor had no name? Or, how could it possibly have aided the objectors, in this lawsuit or otherwise, if the peti-

tioners had kindly informed them whether or not such successor or successors, which had not as yet been created, were duly organized under the laws of this State? It seems to us that this *fifth* objection of the appellants had no foundation in the facts shown by the record, and, certainly, it had none in law.

For their *sixth* objection the appellants say: "The petition is irregular in this, that it asks for an appropriation in aid of more than one railway company." This objection is not shown to be true in fact by the petition appearing in the record; and, therefore, there is nothing in the objection.

The *seventh* objection is as follows: "The New York and Chicago Railway Company is extinct and no longer in existence, and its track in Hobart township is now owned and operated by the New York, Chicago and St. Louis Railway Company, and these facts existed when the pretended aid tax was voted."

The facts stated by the appellants in this *seventh* objection, if facts they be, are not shown to be true by any matter appearing in the record. Nor is it shown how or by what process the New York and Chicago Railway Company became "extinct and no longer in existence"; nor is it shown in what manner, or by what means, its track was then owned and operated by the New York, Chicago and St. Louis Railway Company; nor does the record show that these alleged facts existed when the aid tax was voted. In *Logan v. Vernon, etc., R. R. Co.,* 90 Ind. 552, it was held by this court that a railway company does not become "extinct and no longer in existence," by reason of its failure to perform any of its functions, but, before it can be said that such company is extinct and no longer exists, there must be a judicial declaration of the forfeiture of its corporate rights, privileges and franchises, in a suit instituted for that purpose by and in the name of the State. It is not pretended or claimed by the appellants in this case, that the New York and Chicago Railway Company has ceased to exist by reason of any forfeiture, judicially declared or other-

wise, of its corporate rights, privileges and franchises. We learn from the brief of their counsel, that the appellants claim that the New York and Chicago Railway Company became extinct and no longer in existence by reason of its consolidation with some other railroad company, thus creating a new railroad corporation under the corporate name of the New York, Chicago and St. Louis Railway Company. Under our statute providing for the consolidation of railroad companies (section 3971, R. S. 1881), the consolidation is the result of contract between such companies; and the question as to whether or not either or both of the original companies, by reason of the consolidation, became extinct or ceased to exist, must depend very largely, if not entirely, upon the terms of the contract of consolidation mutually agreed upon in each particular case.

The question is of no practical importance, however, in the case at bar; for here the record shows that all the proceedings were had in anticipation of consolidation, and, in the event of its consummation, in aid of the consolidated company. In *Paine* v. *Lake Erie, etc., R. R. Co.,* 31 Ind. 283, it was held that a railroad company, formed by the consolidation of two companies, succeeds to all the rights of each of the corporations of which it is composed. And, in the recent case of *Scott* v. *Hansheer, supra,* it was held that where an appropriation had been lawfully made by a township in aid of a railroad company, it acquired such a right to and interest in the appropriation as would, upon its consolidation with another railroad corporation, pass to and vest in the consolidated company. In any view of the *seventh* objection, therefore, we think it was not well taken.

The remaining objections of the appellants are all united as a single objection in the brief of their counsel, as follows: " Our last objection to the validity of the tax is that the notice of the election differs from the prayer of the petition and the order of the board of commissioners thereon; that, again,

the order of the board levying the tax differs from the matters voted upon by the voters of Hobart township, as shown by the notice, and that, therefore, the proceedings are void."

The petition for the appropriation substantially complied with the requirements of the statute; the qualified voters of Hobart township were duly notified, pursuant to the statute, that the polls would be opened to take their votes on the subject of such appropriation; the election was held in conformity with law, resulting in a majority in favor of the appropriation; and the county board made the proper order for the levy of the tax, as prayed for. The record of this cause fails to show any material or substantial defect or error in any of the proceedings of the county officers, or before the county board. The appellants' objections were all purely technical, without foundation in law or fact, and did not reach or affect the merits of the cause. In *Gavin* v. *Board, etc.,* 81 Ind. 480, it was held by this court that an appeal from the order of a county board, for levying a tax in aid of a railroad, goes to the circuit court not for the correction of errors, but for trial as an original cause; and that objections there filed, in the nature of errors assigned, should be wholly disregarded, and the appellant can make no question, in this court, concerning the ruling of the circuit court on such objections.

We are of opinion, therefore, in the case in hand, that the decision of the circuit court, in striking out the appellants' written objections to the proceedings before the county board, is not an available error for the reversal of the judgment. We have now considered and decided all the questions presented and discussed by the counsel of the appellants, and our conclusion is that there is no error in the record of which they can complain.

But, before leaving the case, we deem it our duty to direct the attention of the appellees to the imperfect condition of their judgment in the circuit court, which was only for costs. In *Gavin* v. *Board, etc., supra,* a similar case to the one at

bar, the court said: " The statute under which this cause was appealed from the commissioners, required that the circuit court should make a final determination of the matters in controversy, and either carry such final determination into execution, or remand the cause with instructions to the commissioners." Section 5778, R. S. 1881; 1 R. S. 1876, p. 357, section 37; *Mandlove* v. *Pavy*, 33 Ind. 505. ·"The judgment in this case made no order concerning the levy of taxes appealed from, and hence did not make a complete final disposition of the cause; but as no material error was committed against the appellant during the progress of the cause, he is not in a position to demand a reversal of the judgment, however defective in some respects it may be."

The judgment is affirmed, with costs.

