The Board of Commissioners of Marion County v. Center Township et al.

## No. 12,360.

THE BOARD OF COMMISSIONERS OF MARION COUNTY v. CENTER TOWNSHIP ET AL.

STATUTE.—*Forfeitures.* — *Construction.* — Statutes providing for forfeitures will not be extended by construction so as to work a forfeiture.

RAILROAD.—*Public Aid.*—*Forfeiture.*—*Repeal of Statute.*—*Case Criticised.*— That part of section 18 of the act of 1869 (Acts 1869, Spec. Sess., p. 92, section 4062, R. S. 1881), providing that a failure on the part of a railroad company, to which a donation has been voted, to complete its road within three years from the levying of the special tax, or within the additional year that might be given by the board of commissioners, should forfeit the right of the company to the donation, was repealed by the act of January 30th, 1873 (Acts 1873, p. 184). *Indianapolis, etc., R. W. Co.* v. *Board, etc.*, 70 Ind. 385, criticised.

SAME.—*Act of January 30th, 1873.*—*Order of Forfeiture by County Commissioners on Petition and Notice.*—Under the act of January 30th, 1873, there could only be a forfeiture when the county board, on the application of twenty-five freeholders and after notice, should make an order cancelling the donation.

SAME.—Such an order could not be made until after the expiration of three years from the placing of the tax upon the duplicate, and, if before that time the railroad company should expend in the construction of its road in the township a sum equal to the donation, there could be no forfeiture.

SAME.—*When Act of 1873 Applies to Proceedings begun under Act of 1869.*— Where a railroad company, to which aid was voted under the act of 1869, had until June, 1874, within which to complete its road, and the special tax was collected during the years 1871, 1872 and 1873, the act of January 30th, 1873, relating to the method of forfeiture, would apply.

SAME.—*Where Forfeiture not Declared, Railroad Entitled to Donation Notwithstanding Delay in Work.*—Where a donation was voted by a township under the act of 1869, to aid in the construction of a railroad, and there was no forfeiture under section 18 of that act, nor under the act of 1873, by which such section was repealed, nor under any subsequent act, the railroad company is entitled to the money donated, although its road was not completed until 1880.  Act of March 7th, 1877, Acts 1877, Reg. Sess., p. 111.

SAME.—*Act March 11th, 1875.*—*Effect of Proviso.*—The act of March 11th, 1875, re-enacts the second section of the act of January 30th, 1873, only changing the time from three to five years, within which the railroad company shall expend in the township a sum equal to the donation, and the proviso to the act of 1875, that it shall not apply to any railroad where three years have elapsed since the special tax shall have been

placed on the duplicate, merely denies to such company the benefit of the extension of time.

SAME.—*Alterations in Line.*—Alterations in the line of the road which do not change the terminal points, nor materially affect the general route, will not defeat the right of the company to a donation.

SUPREME COURT.—*Rehearing.*—*Amendment of Record.*—The Supreme Court will not grant a rehearing in order that the record may be amended.

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellant.

*C. Byfield, L. Howland, S. M. Shepard, J. B. Elam, C. Martindale, H. N. Spaan, J. W. Baird, A. C. Harris* and *W. H. Calkins,* for appellees.

ZOLLARS, J.—This case was disposed of below upon a special findings of facts and conclusions of law thereon. Whether or not the conclusions of law are correct, is the only question for discussion by this court.

In the examination of that question we shall confine ourselves to the points made by counsel in support of and against the conclusions of the trial court.

In March, 1870, the voters of Center township, upon a petition and order of the county board, as provided by the act of 1869, Acts 1869, Spec. Sess., p. 92, voted aid to the Indiana and Illinois Central Railway Company, in the way of a donation. The donation was voted upon a condition, as expressed in the petition, that no part of the money should be paid to the railway company until it had furnished a bond, with security, to the approval of the county board, that it would locate and build its principal machine shops in the township. At the June session, 1870, the county board granted the prayer of the petition, and made an appropriation and donation of the amount voted to aid in the construction of the railroad, made a levy to raise the amount, and ordered it placed upon the tax duplicate for collection. The appropriation and donation were made upon the condition of the filing of the bond as provided in the petition. Whether or not the whole amount was ordered to be collected in one year, is not shown by the

special finding of facts, but it is shown that it was collected in the years 1871, 1872 and 1873, and passed into the county treasury. No question is made in argument as to the regularity and legality of the proceedings by and through which the money reached the treasury as a donation to the railway company. The railway company, within a year after the levy of the tax, commenced work upon its line of road in Center township, and at other points along its line, but did not complete its road ready for use within three years from the time the tax was levied. In 1873, and before the expiration of the three years, the county board made an order extending the time for the completion of the railroad until the 4th day of June, 1874. The road was not completed within the time thus extended.

In April, 1872, the Indiana and Illinois Central Railway Company executed and delivered to the Union Trust Company, of New York, for the benefit of the holders of its bonds, a trust deed to all of its property, rights of way, and rights of every kind, including its right to the donation voted by the township. The company having defaulted in the payment of the interest, the bondholders appointed a committee to have the trust deed foreclosed, bid in the effects of the railroad company, covered by it, for them, to organize a new company for the completion of the railroad on the line as located, in which new company the bondholders should receive and hold stock in proportion to the amount of their bonds, all of which was carried out. In January, 1875, the trust deed was foreclosed, and all of the property and rights covered by it were sold and purchased by the committee for the bondholders. In September, 1875, articles were filed with the secretary of state incorporating the bondholders under the name of the Indianapolis, Decatur and Springfield Railway Company, for the purpose of completing the railroad projected by the old Indiana and Illinois Central Railway Company. On the 4th day of November, 1875, this new company was consolidated with the Springfield, Decatur

and Indianapolis Railway Company, under the name of the Indianapolis, Decatur and Springfield Railway Company. This company at once proceeded to build the railroad, and complete it from Indianapolis to Springfield, Illinois, but not ready for use along its whole line, nor in Center township, until 1880. The line of road, as projected by the old Indiana and Illinois Central Railway Company, was to begin at the city of Indianapolis, "and extend thence as nearly west as should be found practicable and convenient, by way of, or within half a mile of the towns of Danville, Rockville and Montezuma, in the State of Indiana, and Decatur, in the State of Illinois, in a direction leading to the city of Springfield, Illinois, and passing through the counties of Marion, Hendricks, Putnam, Parke and Vermillion, in the State of Indiana."

The road as built by the Indianapolis, Decatur and Springfield Railroad Company is upon the same general line projected by the Indiana and Illinois Central Railway Company, but the towns of Danville and Rockville are left from five to ten miles to the south. The bond for the shops was not and has not been given, but the principal machine shops of the Indianapolis, Decatur and Springfield Railway Company were erected in the township in 1880.

In 1877, after the foreclosure of the trust deed, the organization of the new company and the consolidation, the township, on the theory that the railroad company had forfeited all rights to the money, brought an action against the board of county commissioners to have the amount turned over and into the township fund. The township recovered a judgment for the full amount, with interest—$71,102.48—in December, 1880. Neither the taxpayers of the township nor the railroad company were parties to that suit. In 1881, by an arrangement between the township trustee and the county board, $13,375.55 was paid to the township trustee; the judgment of 1880 was set aside, and a judgment was entered for $58,202.93, to draw five per cent. interest, and to be paid in

instalments.   Since then, and on the 28th day of June, 1882, the county board paid to the township trustee $2,089.85 of the principal of the judgment, and $5,820.30 interest thereon, of which amount $2,910.15 was paid on the 28th day of June, 1882, and $2,910.15 on the 7th day of February, 1883. The board having neglected and refused to make further payments, without a bond of indemnity against the claims of the taxpayers and the railway company, the township, in January, 1884, filed what is termed an amended complaint in the original cause between the township and the county board. In the complaint the judgment of 1880 is recited, the setting of it aside in 1881, the arrangement then entered into between the township and board, and the failure of the board to carry it out.  It is sought by the complaint to set aside that arrangement and judgment, upon the ground that it is too uncertain to be enforced, that the trustee could not thereby bind the township, and to restore the original judgment of 1880, and the rights of the township thereunder.   The Indianapolis, Decatur and Springfield Railway Company was made a party defendant, upon the ground that it was, and is, asserting some right to the money.

The railway company filed an answer, and also a cross complaint against the township, the board of commissioners and certain named taxpayers of the township.   These taxpayers came in and filed a cross complaint against all the other parties, and asked that the amount of tax paid by them severally should be refunded.   Prior to the 18th day of March, 1881, at which time the county board paid the $13,375.55 to the township trustee and entered into the arrangement of settlement with him, the Indianapolis, Decatur and Springfield Railway Company had demanded the money from the county board.   Prior to that time, also, the said taxpayers had demanded the amounts severally paid by them, but they did not make any demand within two years after the passage of the act of December 24th, 1872, Acts 1872, p. 56, nor within two years after June 4th, 1874.   With the exception

of the amounts paid the township trustee, as above stated, the money is in the county treasury, under the control of the county board, to be paid to the party rightfully entitled thereto.

We have thus given a general statement of the claims of the several parties and the leading facts embodied in the special finding of facts. Upon the facts so found the court below found as conclusions of law:

*First.* That the Indianapolis, Decatur and Springfield Railway Company is not entitled to any part of the fund.

*Second.* That the taxpayers are not entitled to any part of the fund.

*Third.* That the township is entitled to receive from the board of commissioners $64,202.07, and that the board is entitled to costs from the taxpayers and railroad company.

Judgment was rendered accordingly, and affirmed at general term of the superior court.

If the Indianapolis, Decatur and Springfield Railway Company is entitled to the money, we shall have no occasion, under the issues, to consider the rights of the other parties as between themselves. Of course, no former arrangement or adjudication between the township and the county board can affect the rights of the railway company or the taxpayers, as they were not parties thereto.

The donation was voted, made and collected under the act of 1869, Acts 1869, Spec. Sess., p. 92. There was no time fixed in the petition, nor in the order by the board, within which the shops should be built. And they having been built without a bond, it is not claimed by any of the parties that the failure to give a bond in any way affected the rights of the railway company to the donation. Nor is it claimed that the railway company forfeited its rights to the donation by a failure to commence work upon its road within one year from the levying of the special tax. The finding is, that it did so commence work. The arguments in behalf of the township and taxpayers, which are earnest and

able, are, that the railway company forfeited its right to the donation by a failure to complete its road ready for use within three years from the levying of the special tax, and within the additional year given by the county board.

These arguments are based upon the 18th section of the above act (R. S. 1881, section 4062), which provided, that a failure on the part of the railroad company to complete its road ready for use within three years from the levying of the special tax, or within the additional year that might be given by the county board, should forfeit the rights of such company to the donation, and that the money raised by such special tax should go into the general fund of the township. The act of December 24th, 1872, Acts 1872, page 56, further provided for the disposition of such money, forfeited by the railroad company. It is contended that so far as concerns the railroad company, and the donation in this particular case, the above section 18, and the above act of 1872, have remained in full force and effect. It is contended, on the contrary, by counsel for the railway company. that section 18, as to this feature of the forfeiture, and as applicable to this case, has been repealed by subsequent legislation. As we have seen, the railway company, under the extension given by the county board, had until the 4th day of June, 1874, within which to complete its road. Before that time the Legislature passed an act, which was in force from and after the 30th day of January, 1873, Acts 1873, p. 184. The first section of that act (R. S. 1881, section 4068), provides that no tax shall be placed upon the duplicate for the purpose of taking stock or making donations to railroad companies under the act of 1869, until such railroad shall have been permanently located in the township making the donation or taking the stock. The second section provided, that "in all cases where stock has been taken or donations made" by any township for the purpose of aiding in the construction of any railroad, pursuant to the act of 1869, and the special tax "has been placed upon the duplicate for col-

lection," the auditor and treasurer should suspend the collection of such tax, and it should be carried forward on the duplicate without being returned delinquent until such railroad should be permanently located in the township, and an amount of money equal to the amount donated or stock taken should be expended in the construction of the railroad in the township. It was further provided in that section, that if the railroad company should not, within three years after the tax was placed upon the duplicate, expend in the actual construction of its road in the township an amount of money equal to the amount to be donated to, or stock to be taken in such company by the township, the board of commissioners might in their discretion make an order annulling and cancelling such subscription to the stock or donation of money, upon application of twenty-five freeholders, they having given thirty days' public notice immediately preceding the term of the commissioners' court at which such application was to be made. There was a proviso to the section making it the duty of the county board to order the tax to be at once collected, as though never suspended, when satisfied that the amount of the work done equalled the donation, etc.

It is contended by counsel for the township, that this act did not repeal or affect the 18th section of the act of 1869, and that if it did, it was only as to cases where the tax had not been placed upon the duplicate for collection, as mentioned in the first section, or was upon the duplicate and uncollected, as mentioned in the second section. This contention is not without force. But the distinction here sought to be made, seems to have been disregarded in the former adjudication by this court, and it has been held, without any kind of reservation, that the above act of 1873 repealed the 18th section of the act of 1869, so far as that section worked a forfeiture of the donation by the failure of the railway company to complete its road within three years after the levying of the special tax. In the case of *Wilson* v. *Board, etc.*, 68 Ind.

507, it was claimed that the railroad company had forfeited its right to the donation by a failure to complete its road within three years after the levying of the special tax.

After stating that the act of 1873, *supra*, could not be reconciled with the 18th section of the act of 1869, it was said: "And therefore we think that these provisions of the supplemental act of January 30th, 1873, as the later expression of the legislative will, virtually repealed so much of said section 18 as provided that the railroad company, by its failure to complete its railroad ready for use within the time limited in said 18th section, would thereby forfeit its right to the appropriation asked for, and also the provision in said section 3 of said act of December 24th, 1872, that, upon the failure of the railroad company to so complete its road within the time limited, the taxpayers and parties against whom said levies stood charged should be released and discharged from the payment thereof." It was held in this case, that until a forfeiture is declared by the county board, under the provisions of the act of 1873, there is no forfeiture. The doctrine of this case, in its full scope, is reasserted in the cases of *Board, etc.,* v. *Indianapolis, etc., R. W. Co.,* 89 Ind. 101, and *Caffyn* v. *State, ex rel.,* 91 Ind. 324.

In the case of *Sellers* v. *Beaver,* 97 Ind. 111, the point was again made, that the railroad company had forfeited its right to the appropriation, because it had not completed its road within three years after the levying of the special tax. It was held that the provisions of the act of 1873, as amended in 1875, are inconsistent with and repealed section 18 of the act of 1869, whether the appropriation be by way of donation or subscription for stock.

In the case of *State, ex rel.,* v. *Board, etc.,* 92 Ind. 499, the aid was voted in 1869, and the tax was levied and collected in 1871 and 1872. The tax was not on the duplicate when the act of 1873 went into force, and the railroad was not completed until June, 1876, considerably more than three years after the levying of the special tax. For this reason it

The Board of Commissioners of Marion County *v.* Center Township *et al.*

was claimed that the railroad company had forfeited the appropriation. In answer to this it was held that section 18 of the act of 1869, so far as it provided for a forfeiture by a failure to complete the road within three years, was repealed by the act of 1873.

It is true that in all these cases, except the last two, the tax was either not upon the duplicate or was upon the duplicate and uncollected; but that fact was not assigned as a reason for the decisions. They seem to have been made without reference to that fact, and the broad and general doctrine was stated that section 18 of the act of 1869, upon the subject of forfeiture by a failure to complete the railroads within three years, was repealed by the act of 1873.

If these cases should be limited in their scope, as contended by counsel, such a limitation would not avail the township nor the taxpayers in this case.

In their contention counsel overlook the facts, as stated in the special finding of facts, that the tax was collected during the years 1871, 1872 and 1873.

This finding brings the case within the act of 1873, upon the rule and contention insisted upon by counsel. It is true that the special findings do not show how much of the tax was collected in 1873, nor at what time in the year it was collected, but in view of the decisions above cited, and the rule that statutes providing for forfeitures will not be extended by construction so as to work a forfeiture, we can not assume and hold that the tax collected in 1873 was collected before the 30th day of January, at which time the act of 1873 went into force. Upon an examination of the whole case, the statutes and decisions, we are constrained to hold that the act of 1873 covered the case, and prevented a forfeiture by the simple failure on the part of the railroad company to complete its road within three years after the tax was placed upon the duplicate. The act of 1873 did not provide for a forfeiture by the lapse of time alone. It provided that if, within three years after the placing of the tax upon

the duplicate, the railroad company should not have expended in the construction of the road in the township an amount of money equal to the amount donated, the county board might, in their discretion, upon the application of twenty-five freeholders, and notice, make an order annulling and cancelling the donation or subscription. Until such an order should be made, there could be no forfeiture under that act. Such an order could not be made until after the expiration of three years from the placing of the tax upon the duplicate, and if before that time the railroad company should have expended in the construction of its road in the township, an amount of money equal to the amount donated, there could be no forfeiture, and it became the duty of the county board to cause the tax to be collected. It is not shown that the county board, in the case before us, ordered a suspension of the collection of the tax, nor is it shown that any order was made annulling and cancelling the donation. There was, therefore, no forfeiture or cancellation of the donation, either under section 18 of the act of 1869, or the act of 1873, none under the act of 1869, because section 18 of that act was repealed by the act of 1873, and none under the act of 1873, because the county board never ordered or declared any. The cases above cited fully support this conclusion. If then, at any time during the year 1873, or subsequent years, the railroad company had expended in the construction of its road in the township, an amount of money equal to the amount donated, it would have been entitled to the donation, unless defeated in that right by subsequent legislation. This brings us to the act of March 11th, 1875, Acts 1875, Reg. Sess., p. 121. That was an act amending section 2 of the act of 1873. It is an exact copy of that section, except that the time within which the donations may be annulled and cancelled is fixed at five instead of three years, as in the section amended, and except the following proviso added: *"And Provided, further,* That the provision of this act shall not apply to any railroad, in any case, where

three years or more have elapsed since the tax, in aid thereof, shall have been placed on the tax duplicate for collection."

It is contended that this act repealed section 2 of the act of 1873, amended thereby, and did not save this case, because the proviso excluded it, the tax having been placed upon the duplicate more than three years prior to the passage of the act. In support of this contention, we are referred to the case of *Indianapolis, etc., R. W. Co.* v. *Board, etc.,* 70 Ind. 385. That was a case to enjoin the collection of a tax levied in June, 1870. The tax was, of course, upon the duplicate, and uncollected in October, 1875, when the case was commenced. The appropriation was made for the purpose of taking the amount in the stock of the railroad company. The contention was, that the appropriation was forfeited under section 18 of the act of 1869, because the railroad company had not completed its road within three years after the special tax was levied. In the principal opinion, citing section 18 of the act of 1869, section 3 of the act of December 24th, 1872, and the case of *State, ex rel.,* v. *Wheadon,* 39 Ind. 520, it was held that the tax was forfeited. No notice was taken of the act of January 30th, 1873, nor was notice taken of the fact that the case cited arose and was disposed of by the court before the passage of the act of 1873.

In disposing of the petition for a rehearing, it was said, that section 3 of the act of December 24th, 1872, was still in force, but the tax having been levied in 1871, was forfeited at the time of the passage of the act of March 11th, 1875, and that the act of 1873 having been repealed by said act of 1875, there was no law to support a tax which had been placed on the duplicate for collection more than three years prior to the said act of 1875. This case, although reported later, was decided before the case of *Wilson* v. *Board, etc., supra.* It is in conflict with the Wilson case and the other cases above cited in several particulars. It holds that there might be a forfeiture under section 18 of the act of

1869 of an appropriation for stock. They hold that that section did not provide for such a forfeiture. It holds that when the tax was upon the duplicate uncollected, and three years had not elapsed from the levying of the tax until the taking effect of the act of January 30th, 1873, such tax was forfeited under section 18 of the act of 1869. They hold in such a case, that the act of 1873 repealed section 18 of the act of 1869, and provided a new mode of forfeiture. Thus far, at least, that case has been overthrown. The only thing said in the case, as to the force and effect of the proviso in the act of 1875, was, as we have seen, that the appropriation had been forfeited by the railway company before the passage of that act, and that as the act of 1873 had been repealed by the act of 1875, there was no law left to support the tax which had been placed upon the duplicate more than three years prior to the act of 1875. This statement is based, in the main, upon the assumption, which was a false one, that the rights of the railway company to the appropriation had been forfeited under section 18 of the act of 1869, before the passage of the act of 1875. This case was again in this court, and is reported in 89 Ind. 101.

In this later decision nothing is said as to the effect of the proviso in the act of 1875 upon the case. It may well be conceded that if the rights of the railroad company had been so previously forfeited, the act of 1875 would not have the effect of restoring them.

But that is not the case before us. Here, the right of the railroad company to the donation had not been forfeited before the passage of the act of 1875; at the time of its passage more than three years had elapsed since the tax had been placed upon the duplicate, and the tax had been collected and was in the county treasury. The effect of the proviso in the act upon such a case is a question not yet passed upon by this court, and one of no little difficulty.

If it be said that the act of 1875 repealed section 2 of the act of 1873, which it amended, it does not follow that sec-

tion 18 of the act of 1869 was thereby revived, because the act of 1875 is as much in conflict with that section as was the section of the act of 1873 amended. If, then, at the time the act of 1875 was passed, the right of the railway company to the donation had not been forfeited, did that act cut off that right, and if so, in what manner? The right of the railroad company to the donation was given and fixed in the first instance by the vote of the taxpayers, the orders of the county board, the placing of the tax upon the tax duplicate, and its collection. Section 15, act of 1869, Acts 1869, Spec. Sess., p. 95, R. S. 1881, section 4059, provides that if after the special tax shall have been levied, and before it has been collected, the railway company shall have so far completed the road as to be entitled to receive the money, the same may be paid on the order of the board of county commissioners, out of any money in the county treasury, not otherwise appropriated, to be refunded to the county when such special tax shall have been collected.

The 16th section of the same act, R. S. 1881, section 4060, provides that no donation of money shall be made to any railroad company by the county board, until the railroad to be constructed shall have been permanently located, and work done and paid for by the company equal to the amount of the donation then made, and that not to exceed fifty per cent. of the money voted shall be paid to the railroad company, until the iron is laid upon the road and a train of cars shall have passed over the entire length thereof in the township.

The 17th section of the same act, R. S. 1881, section 4061, provides that after the money appropriated shall have been collected, the railroad company having fully constructed the railroad as contemplated in the petition, so that trains of cars shall pass over the same, shall have the right to demand and have said money paid over to it.

These sections, in connection with the other sections of the act authorizing the appropriation and collection of the money, are the sections which affirmatively fix the rights of the rail-

road company to the money.   It will be observed that they make the payment of the money conditional upon the amount of work upon the railroad, but they fix no limit within which the railroad shall be built, to entitle the company to the . money donated.

Under these sections, whenever the road is built, the company is entitled to the money, be that within three, ten or any other number of years.   Section 18 of that act, in no way bestowed any right, but provided for the forfeiture of the rights conferred by the other sections.   The repeal of that section, therefore, could not and did not deleteriously affect the rights conferred by the other sections.   Neither did the act of January 30th, 1873, confer any additional rights upon the railroad company.   It abridged those rights by postponing the collection of the tax, and like section 18 of the act of 1869, provided for a forfeiture.   To repeal that act, therefore, would be to remove an obstacle in the way of a speedy collection of the tax, and overthrow a provision authorizing a forfeiture of the rights of the railway company to the donation.   If, then, the second section of the act of 1873 was repealed by the amendment of 1875, in what position did it leave the railway company in respect to the donation?   Its right to the donation was given by the sections of the act of 1869, other than the 18th section.   This right · had not been forfeited under that section, nor under the act of 1873.   The repeal of the latter act, which provided for a forfeiture, clearly did not work a forfeiture.   It can not be said, therefore, that the repeal of that act left no law to support the tax, or the right of the railroad company to the donation, because its right to the donation did not rest upon that act, but upon the sections of the act of 1869, which conferred it.   If the second section of the act of 1873 was repealed · by the amendment of 1875, simultaneously with the repeal, the act of 1875 went into force; and if that act, by reason of the proviso therein, did not cover the case before us, then

it would seem that the rights of the railroad company were left unaffected, with no means of forfeiture.

The leading provisions of the act of 1875 are, that if the special tax is upon the duplicate, its collection shall be suspended until the railway company shall have expended in the construction of its road, in the township, an amount of money equal to the donation, and that if such an amount shall not be so expended within five years, the county board, on the application of twenty-five freeholders, may, in their discretion, annul and cancel the donation.

The proviso is that the provision of the act shall not apply to any railroad company in any case where three years have elapsed since the tax in aid thereof shall have been placed upon the duplicate.

If this act and the proviso be given an absolutely literal interpretation, it must mean, and can only mean, that if in any case three years shall have elapsed since the tax was placed upon the duplicate, such tax shall not be suspended, and the county board shall not annul and cancel the donation, even though the requisite amount of work may not be done upon the railroad within the five years. Such an interpretation would not destroy or overthrow the donation in controversy, nor the right of the railroad company thereto; but, on the other hand, would continue them as they were before the act, with no means provided for their forfeiture. Such an absolutely literal interpretation evidently does not express the true intent of the Legislature in the enactment of the statute.

The true intention, doubtless, was not to exempt such railway companies from every provision of the act, but from the provision extending the time within which the company might do the work, and within which the county board might not declare a forfeiture of the donation.

It will not be necessary for us here to enter upon a discussion of the rules of construction that would justify such an interpretation of the act and the proviso thereto; nor shall we enter the debatable ground as to whether or not the act,

by re-enacting the 2d section of the act of 1873, with the simple change of three to five years, and the addition of the proviso, repealed or continued that section in force.

*First.* Because if that section was thus continued in force, the right of the railway company to the donation not having been forfeited thereunder, so far as that act is concerned, is still intact.

*Second.* Because, if that section was repealed by the amendment of 1875, and that amendment did not embrace and cover the case before us, the right of the railway company to the donation, so far as that act is concerned, is still intact; and,

*Third.* Because, if the amendment of 1875 did embrace and cover the case before us, so as to extend the time within which the railway company might do the work, and within which the county board might not declare a forfeiture, the right of the railway company to the donation, so far as that act is concerned, is still intact, there having been no forfeiture declared under its provisions.

It may not be amiss to observe in passing that an absolutely literal interpretation of the act of 1875, as contended for, would lead to unreasonable results, by putting a limit upon railroad companies where three years had not elapsed since the placing of the tax in aid thereof upon the duplicate, while it imposed no limit at all upon companies where three years or more had elapsed since the tax in aid thereof had been placed upon the duplicate.

It may be observed, too, as tending in a very slight degree to show the purpose of the Legislature to exempt the cases named from the single provision extending the time, that in the proviso the word *provision*, and not provisions, is used.

And still further, it may be observed, that the evident purpose of the acts of 1873 and 1875 was not to hasten forfeitures of the rights of railroad companies to donations voted to them, but to liberalize and to extend the time to the

companies within which to complete the roads and save the donations.

Section 18 of the act of 1869 provided for an absolute forfeiture, if the railroad should not be completed within the three years from the levying of the tax in aid thereof. The act of 1873 softened that rigid rule by providing that there should be no forfeiture until after three years, and not then, unless the board of commissioners, upon the petition of twenty-five freeholders and proper notice, should, in their discretion, annul and cancel the donation.

The act of 1875 provided for a like forfeiture, but extended the limit from three to five years within which the railroad company might do the required work, and within which the board of commissioners could not declare a forfeiture. If then, as we have concluded, the right of the railway company to the donation was not forfeited under the acts of 1869, 1873 or 1875, that right is still intact, unless defeated by subsequent legislation.

There has been no legislation since the act of 1875, providing for the forfeiture of the rights of railroad companies to donations voted to them.

In the spirit of liberality apparent in the acts of 1873 and 1875, the Legislature passed an act in 1877, which was approved on the 7th day of March, and went into force on the 2d day of July of that year. Acts 1877, Reg. Sess., p. 111. That act provides, that any railroad company then organized under the laws of the State, to which any township had made an appropriation of money to aid such company in constructing a railroad in or through such township, by taking stock in, or donating money to such company, shall have five years from the passage of the act in which to complete such railroad for use, and that, when so completed, the company shall be entitled to such appropriations. There is a proviso that the act shall not be so construed as to entitle any company to such appropriation that has failed to commence work upon its road within two years from the levying of the special tax

for such purpose. The provision is of no importance in the case in hearing, because work had been so commenced.

This is a sweeping statute, and broad enough to cover all cases where donations had been made by townships to railroad companies. Whether or not it would cover and save a donation that had been forfeited under other statutes, we need not now decide. It very clearly covers cases like this, where such donations had not been forfeited. This act, perhaps, did not displace the act of 1875, so far as that act provided a means of declaring a forfeiture. But, however that may be, the act is not material in the case in hearing, because as we have before observed, no forfeiture of the donation, or the right of the railway company thereto, has been declared or taken place.

We have thus far treated the case as though there had been no foreclosure of the trust deed, and no sale of the rights, property and effects of the old Indiana and Illinois Central Railway Company, and as though the contest was between that company and the county board, township and taxpayers. As we have seen, however, the trust deed which covered the right of the old company to the donation was foreclosed in January, 1875, and all the rights and property of the old company of every kind were sold and purchased by the bondholders.

Holding this property and these rights, the bondholders were incorporated as a railway company, and that company consolidated with another, under the name of the Indianapolis, Decatur and Springfield Railway Company, which is the company engaged as a party litigant in this case. That this company succeeded to all of the rights of the old company in and to the donation, is not questioned in argument. It seems to be conceded that this question is settled in favor of the Indianapolis, Decatur and Springfield Railway Company, by the case of *Scott* v. *Hansheer*, 94 Ind. 1. We do not, therefore, go into an examination of that question.

At the time of the foreclosure, sale, incorporation and consolidation, in 1875, the money was in the county treasury.

Whether or not a sufficient amount of work had been done at that time upon the line of the railroad in the township, to entitle the company to have the money paid over, is not developed by the special findings. But by 1880, and before any forfeiture had taken place or been declared under the laws, the Indianapolis, Decatur and Springfield Railway Company, successor to the old company, had constructed and completed the entire line of road, and thus became entitled to demand and receive the money so donated and paid into the county treasury.

Another question is made by the taxpayers, and that is, that the railroad was not constructed upon the line as projected by the Indiana and Illinois Central Railway Company, and as that line was described in its charter.

As we have seen, the railroad was constructed through the same counties in the State, between the same terminal points; and upon the same general line projected by the old company, unless the leaving of the towns of Danville and Rockville from five to twelve miles to the south was a material departure from that line. We do not think that this was such a material departure, if a departure at all, as will affect or defeat the right of the company to the donation.

All that is required in the way of a description of the line, in the articles of incorporation, is to give the names of the places from which and to which the proposed road is to be constructed, and each county into or through which it is intended to pass, and its length, as near as may be. R. S. 1881, section 3885.

The board of directors may make any changes of the line which do not change the general route of the road. R. S. 1881, sections 3903, 3913, 3914. It would seem from a reading of the statute, that it was not necessary to name the towns as in the old company's articles of incorporation. But, as there named, they were only fixed as points through or near which the road should pass if that was found to be convenient and practicable.

It has been held that a subscription to stock will not be defeated by a change in the route of the railroad, although the change may be authorized by a subsequent alteration in the charter of the company, provided such a change does not make an improvement of a different character, and the interest of the subscriber is not materially affected thereby. *Banet* v. *Alton, etc., R. R. Co.*, 13 Ill. 504.

It has been held, too, that when the charter of the company authorizes changes to be made in the line of the road, the subscriber will be held to have contracted with reference to such possible changes, and will not be released thereby if they are within the limit fixed by the charter. *Colvin* v. *Liberty, etc., T. P. Co.*, 2 Ind. 511 ; *Railsback* v. *Liberty, etc., T. P. Co.*, 2 Ind. 656 ; *Sparrow* v. *Evansville, etc., R. R. Co.*, 7 Ind. 369 ; *Bish* v. *Johnson*, 21 Ind. 299.

It is apparent here, that the one condition upon which the donation was voted was, that the principal shops of the company should be erected in the township. It is not apparent or inferable, that the probable location of the line of road near to the towns named in any way influenced the vote. Nor is it shown that the leaving of those towns to the south of the road materially affected the interest of the voters or the township. So far as shown, the road was constructed through the township upon the exact line projected by the old company.

Prior to the payment of the $13,375.55 to the township trustee, on the 18th day of March, 1881, and the subsequent payments made under the arrangement then entered into between the county board and the township trustee, the Indianapolis, Decatur and Springfield Railway Company demanded of the county board the money donated, and then in the county treasury. The exact date of the demand is not shown but for the purposes of this case it may be taken as having been made on the 18th day of March, 1881, and prior to the payments by the board to the township trustee. The railway company is, therefore, entitled to the $65,000 and

interest thereon at six per cent. per annum from the 18th day of March, 1881.

The judgment is reversed at the costs of Center township, and the cause remanded with instructions to the court below to make its conclusions of law in accordance with this opinion, and to render judgment in favor of the Indianapolis, Decatur and Springfield Railway Company, against the board of commissioners of Marion county, for $65,000 and interest thereon at six per cent. per annum from the 18th day of March, 1881.

ELLIOTT, J., did not take any part in the decision of this case.

Filed Oct. 6, 1885.

## ON PETITION FOR A REHEARING.

HOWK, C. J.—Center township, of Marion county, has presented in this cause a very earnest and elaborate petition for a rehearing, fortified as to matters of fact by numerous certificates and affidavits, and strongly supported by the able and exhaustive briefs of its counsel. On the other hand, a number of counter affidavits have been filed on behalf of the Indianapolis, Decatur and Springfield Railway Company, in whose favor the judgment below is reversed and the cause is decided by this court, in the principal opinion, and also a learned and carefully prepared argument by its counsel, in opposition to the petition for a rehearing.

The principal ground upon which the rehearing is prayed for is, that the record of the cause does not speak the truth as to one matter of fact, upon which our opinion is largely rested in deciding the case in favor of such railway company. The fact referred to, as specially found by the trial court, was substantially that such railway company, as the successor of the Indiana and Illinois Central Railway Company, some time prior to the trial of the cause, had located and built its principal machine shops within the limits of Center township. It is claimed in the petition for a rehearing, and cor-

rectly so it appears, that the fact thus found by the court at special term is not true, but, on the contrary, the fact is, that the principal machine shops of such railway company are located and built beyond the line dividing Center and Wayne townships, in Marion county, and within the limits of Wayne township. It is further claimed, that this mistake of fact, as it is called, in the special finding of facts, had its origin in the mutual mistake of the counsel engaged in the cause, as to the actual and true location of the principal machine shops of the railway company. However this may have been, during the pendency of the cause in the court below, it is shown with reasonable certainty, as it seems to us, that the able attorney of Center township was fully informed of such mistake of fact in the special finding of facts, and that such railway company had, in fact, located and built its principal machine shops within the limits of Wayne township, and not, as specially found by the trial court, in Center township, before the oral argument of the case in this court was fully heard, or the cause was finally submitted for our decision. We were not informed of any mistake of fact in the record, but we heard and decided the cause, with the belief and upon the supposition that the record before us, as it ought to have done, imported "absolute verity."

Our decision of the cause, as presented by all the parties to the record, is adverse, and therefore is not satisfactory, to Center township. We are now asked, on behalf of such township, to grant a rehearing and a stay of proceedings in the pending appeal, until such time as the record below can be so corrected that it will "speak the truth."

This court has always refused, and in cases of as much magnitude and importance as the case in hand or more, to grant a rehearing in order that the record may be amended. *War-ner* v. *Campbell*, 39 Ind. 409 ; *Pittsburgh, etc., R. R. Co.* v. *Van Houten*, 48 Ind. 90 ; *Cole* v. *Allen*, 51 Ind. 122 ; *State, ex rel.,* v. *Terre Haute, etc., R. R. Co.*, 64 Ind. 297 ; *Merrifield* v. *Weston*, 68 Ind. 70 ; *Board, etc.,* v. *Hall*, 70 Ind. 469 ;

*Mansur* v. *Churchman,* 84 Ind. 573; *Robbins* v. *Magee,* 96 Ind. 174; *State* v. *Dixon,* 97 Ind. 125.

There is nothing exceptional in the case under consideration, so far as we are advised, which can or ought to induce us to depart from this long-established and reasonable rule of practice. On the contrary, we are of opinion that the case before us is one where this rule of practice ought to be closely adhered to and strictly enforced.

Upon the case as it was submitted to us by all the parties to the record, Center township included, and considering, as we must, in the absence of any sufficient showing to the contrary, that the record spoke the exact truth in regard to every fact therein found by the trial court, we are content with our original opinion herein, and adhere to the law of the case, as therein declared, on every material point. We have nothing to add thereto nor take therefrom. We need not, therefore, extend this opinion in the re-examination or further discussion of any of the questions involved in the cause.

The petition for a rehearing is overruled, at the costs of Center township.

ELLIOTT, J., was absent when the petition was considered and the rehearing denied.

Filed May 24, 1886.