BLUNT ET AL. V. CARPENTER, COUNTY TREASURER, ET AL.

1. **Taxes in Aid of Railroads:** ALIENATION OF ROAD: TAX AVOIDED: INJUNCTION: ESTOPPEL. Taxes voted to a corporation, under chapter 123, Laws of 1876, to aid in the construction of a railroad, after the corporation has transferred its road in pursuance of a purpose entertained from the beginning, of which public notice was given to the voters before the election, cannot be collected, and their collection may be enjoined, notwithstanding the tax payers remained silent while they saw the road built by the company to which it was so transferred, knowing that such company was building it in reliance upon the payment of the taxes. To allow the taxes to be collected under such circumstances would be to disregard the terms of the statute, and would work gross injustice to the minority who voted against the tax. (Compare *Manning v. Mathews*, 66 Iowa, 665.)

*Appeal from Fayette Circuit Court.*

TUESDAY, FEBRUARY 2.

ACTION to restrain the collection of a five per cent railroad tax voted by the electors of West Union township to aid in the construction of a railroad from Wadena to West Union. The Chicago, Milwaukee & St. Paul Railway Company and the Chicago, Clinton, Dubuque & Minnesota Railroad Company answered the petition. A demurrer to their answers was sustained, and, refusing to plead further, a decree was rendered against them, enjoining the collection of the tax, and declaring it to be illegal and void. The defendants appeal.

*J. W. Carey* and *Noble & Updegraff*, for appellants.

*Myron H. Beach*, for appellees.

BECK, J.—I. The questions for decision in this case arise upon the pleadings, which are voluminous. The petition, among other things, alleges and shows that the tax in question was voted to the Chicago, Clinton, Dubuque & Minnesota Railroad Company, to aid in the construction of a

railroad from Wadena to West Union, a distance of fourteen miles; that, at the time the proceedings were had pertaining to the tax, that corporation had ceased to exist, and had no organization and no officers in the state; that before these proceedings the road, franchises and other property of the corporation had been transferred to the Chicago, Milwaukee & St. Paul Railway Company, which held possession of all such property; that this railroad corporation and its officers conspired to defraud the voters of the township by inducing them to vote a tax, to aid in the construction of the proposed railroad, to the defunct corporation, which was insolvent, and its stock worthless; that the road, with all its property and the franchises of the corporation, having passed out of the possession and ownership of the company, its stock, which under the statute should be issued to those paying taxes, is worthless, and the Chicago, Milwaukee & St. Paul Railway Company has thus had the benefit of the tax without rendering, or being liable to render, anything in return to the taxpayers; that the road was built and has been mortgaged by the Chicago, Milwaukee & St. Paul Railway Company; and that, by reason of these matters, the plaintiff's have been defrauded, and the conditions upon which the taxes were voted have been forfeited, and all the proceedings have been rendered void. Other matters set out in the petition need not be here stated. The railroad companies, in their answer, allege that the Chicago, Clinton, Dubuque & Minnesota Railroad Company is not defunct, but still has an organization and corporate existence; that it did not transfer to the other company all its rights, property and franchises; and that the tax was voted to the Chicago, Clinton, Dubuque & Minnesota Railroad Company with a full knowledge of the case by the voters. The answer denies all charges of fraud, and alleges that representatives of the voters of the township applied to the Chicago, Milwaukee & St. Paul Railway Company to induce it to build the road, and accept the aid of a tax to be voted for that purpose. A proposition to that

effect was declined by that company, and the representatives were inform that it would not issue its stock for the taxes voted; but it proposed that, if the tax should be voted to the other company, it would build, acquire and operate the road. It was then known and understood that stock issued for taxes voted to the Chicago, Clinton, Dubuque & Minnesota Railroad Company would be worthless. This proposition was accepted, and all the facts connected with the condition of the Chicago, Clinton, Dubuque & Minnesota Railroad Company, as well as the proposition of the other corporation to build, acquire, and operate the road, were known to the plaintiffs and other voters of the township, and were published and discussed in the newspapers of West Union, and with such knowledge the taxes were voted. The answer alleges or admits that the railroad was mainly built and subsequently acquired by the Chicago, Milwaukee & St. Paul Railway Company, and that it was the purpose and intention from the first that the road, when built, should be acquired by that company.

II. The controlling question presented by the case is this: May taxes be collected which were voted to a corporation to aid in the construction of a railroad, after the corporation has transferred its road in pursuance of a purpose entertained from the beginning, of which public notice was given to the voters before the election? The position will not be questioned that a tax in aid of a railroad corporation cannot be voted, levied and collected except upon a substantial compliance with the statute authorizing such proceedings. This statute (Chapter 123, Acts Sixteenth Gen. Assem.) provides that the tax-payers shall receive stock of the company building the road for the taxes paid by them.

In a recent case (*Manning v. Mathews*, 66 Iowa, 675,) we held that the transfer of the railroad would defeat the collection of taxes voted to aid in its construction. We expressed our views of the law upon that point in the following language: "The statute, in providing for the enforced contribu-

tion by taxation to aid the construction of railroads, contemplates that the tax-payer may become a stockholder, upon the ground, doubtless, that he ought not to be compelled to make contribution to a private enterprise, producing public benefits, wholly without compensation; and that, as the railroad is a thing of public nature, producing public benefits, in which the tax-payer shares, he ought to be in the position, as a stockholder, to have a voice and influence in preserving its existence and controlling its use so as to secure the public benefits for which it was built. The object of the statute was not primarily that the tax-payer should receive money or any other thing upon payment of his tax, but that he should receive the stock in the corporation building the road, to the end that he should have an interest in the road built. His stock, if separated from the railroad, would be to him as any other property. It cannot be that the statute intended that he should be taxed to aid in building the railroad, and that, before his tax is collectible, the road could be alienated, and in its place the corporation would acquire bonds or other property, to be held for the benefit of the stockholders. The statute does not contemplate that the tax-payer shall hold an interest as a stockholder in any property other than the railroad. This is evident from the fact that the object of the statute is for certain public purposes,—to provide a way to aid in the construction of railroads. It cannot therefore be that the statute will permit taxes to be collected when it becomes certain that the tax-payer can have no interest in the railroad,—the very thing for which he was taxed. It is plain from the provision of the statute making the directors liable in double the par value of the stock, in case the road is incumbered beyond the prescribed limit, that it is the purpose of the statute to preserve the existence of the road in the corporation, building it, and thus preserve the tax-payer's interest therein."

In the case before us, as shown by the answer of defendants, the railroad has been transferred, and stock in the com-

pany to which aid was voted would give the tax-payers no interest in the road. Under the doctrines announced by the foregoing quotation, the taxes cannot be collected.

III. Defendants show in their answer that the intended transfer of the road, and the fact that it was built by the Chicago, Milwaukee & St. Paul Railway Company, with the purpose of subsequently acquiring it, were known to the voters of the township prior to the election. It is insisted that the tax-payers, having remained silent until the railroad was built, cannot afterwards object to the collection of the taxes. This would possibly be true if the tax-payers, under the statute, were authorized to receive no other benefits than those flowing from the construction of the road. But they are entitled to receive stock which shall give them an interest in the railroad. If they are deprived of this by the voluntary act of the parties claiming the benefit of the tax, they fail to secure the very consideration for which the tax was voted.

IV. The statute authorized the electors to vote the taxes, and the corporation to receive them, on condition that stock in the company should be issued for the taxes paid. We cannot recognize the right of the electors and the corporation to set aside this provision by agreement or waiver, and to vote and appropriate taxes for the construction of the road, without giving to the tax-payers stock in the corporation which shall secure to them an interest in the road. Surely this would be most gross injustice to the minority of the electors who voted against the tax, and for this reason, with others, it ought not to be permitted.

We reach the conclusion that the judgment of the circuit court ought to be

AFFIRMED.