Filed May 29, 1888.

---

No. 12,624.

THE BOARD OF COMMISSIONERS OF HAMILTON COUNTY ET AL. *v.* THE STATE, EX REL. COTTINGHAM ET AL.

RAILROAD.—*Township Aid.*—*Taking Stock.*—*Mandate to Compel Collection of Special Tax.*—*Mortgage.*—*Foreclosure and Sale.*—Under the act of 1869 (Acts 1869, Spec. Sess., p. 92) a township, upon a proper petition, voted to aid a named railroad company in constructing a railroad by taking the stock of such company to a certain amount. A special tax was levied in 1872 for one-half of the amount appropriated, and the money thus raised was paid to the company, it having done work to that amount in the township. The next year a levy was made to raise the balance of the appropriation, but it has never been placed upon the tax duplicate for collection. In 1875, and before the completion of the road, the company mortgaged all its property and franchises, became insolvent, and ceased work upon the road. At a sale under a foreclosure of the mortgage, all the property and franchises covered by the mortgage were conveyed to a new and independent corporation, sustaining no relation to the old company. The new company has completed the road through the township. It has neither issued nor offered to issue any capital stock to the township, but seeks by mandate to compel the collection of the second half of the taxes levied in behalf of the old company.

*Held*, that no right to the appropriation passed to the new company by the mortgage and foreclosure proceedings, and it is not entitled to the money voted to the old company, and can not enforce the collection of the taxes, as it can neither demand the appropriation as a donation nor in return for stock other than that of the company to aid which the appropriation was made.

Board of Comm'rs of Hamilton Co. *et al. v.* State, *ex rel.* Cottingham *et al.*

SAME.—*Aid by Way of Donations and Taking Stock.—Statutory Distinction.*—
The statutes of this State create a distinction between appropriations
by townships, by way of donations to railroad companies, and by way
of taking stock therein; and the people to be taxed have a right to de-
termine in advance, and to impose a condition, that the amount ap-
propriated shall be by way of taking stock; when this has been done,
the money can not be demanded by the railroad company as a donation.

SAME.—*Appropriation a Contract.*—An appropriation by a township by way
of taking stock in a railroad company, when within the authority given
by the statutes and when the subscription is made, will be considered as
a contract, just as a subscription for stock in such company by an indi-
vidual is a contract, and the township is entitled to the same protection
as a private subscriber.

SAME.—*Subscription to Stock.—How Made.*—Under the act of 1869, concern-
ing aid to railroads, the simple voting of aid by a township is not a sub-
scription to the stock of the railroad company, but the subscription is
to be made by the board of county commissioners, which, for that pur-
pose, acts as the agent of the township, and until the board exercises
such power there is no perfected or enforceable subscription.

SAME.—*When Appropriation Becomes a Chose in Action.*—Until the railroad
company to which aid has been voted occupies a position which will
enable it to enforce whatever right or interest it may have in the appro-
priation, such appropriation is not a chose in action in its favor which
it can assign or mortgage.

SAME.—*Sale of Railroad Under Foreclosure.—Release of Subscribers to Stock.*—
Under the act of 1865 (Acts 1865, Reg. Sess., p. 66; R. S. 1881, section
3947; *et seq.*), relating to the sale of railroads and the formation of new
corporations, all subscriptions to the stock of a railroad company whose
property has been sold under foreclosure proceedings are discharged,
unless there has been a previous adjustment, and such act of 1865 is ap-
plicable to subscribers who have become such under subsequent statutes.

From the Hamilton Circuit Court.

*A. F. Shirts, G. Shirts, W. R. Fertig, W. S. Christian, I.
W. Christian, J. Stafford, T. E. Boyd, T. E. Ballard, E. E.
Ballard, P. S. Kennedy, S. C. Kennedy, J. H. Burford* and
*W. T. Whittington,* for appellants.

*H. Crawford, T. J. Kane* and *T. P. Davis,* for appellees.

ZOLLARS, J.—The Midland Railway Company, an appel-
lee in this action, claims to be the successor of the Anderson,
Lebanon and St. Louis Railroad Company, and as such en-

titled to an appropriation voted in aid of the latter company by Noblesville township, in Hamilton county. The whole of the amount so voted has not been placed upon the tax duplicate for collection. Appellee Cottingham, and the Midland Railway Company, as relators, filed a complaint in the court below against the board of commissioners of Hamilton county, and James W. Crooks, as the auditor of that county, in which they asked that, by a writ of mandate, Crooks should be compelled to place the amount upon the tax duplicate for collection, and that the county board should be compelled to make an order for its collection. An alternative writ of mandate was issued and served, and to that writ appellants made return. A demurrer was sustained to the return, and a peremptory writ ordered.

Passing over the question as to whether or not, in a case like this, the railway company may be a relator, and other questions which do not go to the merits of the real controversy, we direct our attention to the return by appellants, as that does present the controlling question in issue.

The following summary embodies such portion of the facts averred in the return as needs to be here set out: In 1871, a proper petition was presented to the board of commissioners of Hamilton county, asking that Noblesville township should appropriate $28,500 to aid the Anderson, Lebanon and St. Louis Railroad Company in constructing a railroad through the township, by taking stock in that company. In accordance with the petition, an election was ordered and held, and the amount voted for the purpose of taking stock in the railroad company. At its June session, 1872, the county board granted the prayer of the petition, and levied a special tax upon the property in the township to raise one-half of the amount appropriated. At its June session, 1873, the county board levied a special tax to raise the balance of the amount appropriated. The tax was ordered for the purpose of aiding the railroad company by taking stock therein.

The amount of the first levy was collected, and the rail-

road company having done work equal to that amount upon its line in the township, the money was paid over to it, and the township received stock in return.

The second levy has not been placed upon the tax duplicate for collection.

In 1875, and before the company had completed the construction of its road through the township, it executed a mortgage upon its franchises, rights, titles, privileges and immunities, and upon all of its property real and personal, and choses in action of every description, to two persons, as trustees for its bondholders. In 1878, suit was commenced in the circuit court of the United States for the District of Indiana, to foreclose the mortgage. A decree of foreclosure was rendered by that court in 1883. In 1885, W. P. Fishback, master in chancery, by order of the court, sold all of the property covered by the mortgage. It was purchased by Thomas C. Platt, as trustee of the bondholders. The sale was confirmed by the court, and the master in chancery was ordered to, and did, convey the property to appellee, the Midland Railway Company, a corporation organized by the purchaser and his associates for the express purpose of taking, in its own name, the title to the property so sold and purchased.

Immediately after executing the mortgage, the Anderson, Lebanon and St. Louis Railroad Company became and remains insolvent, and ceased work upon its road. After the purchase the Midland Railway Company took possession of the property, and, at the time this action was commenced, had so far completed the construction of the road through the township that construction trains might pass over it, but it is not in a condition for passenger and freight traffic.

The Midland Railway Company is a new and independent corporation, sustaining no relation to the old company. It has not issued nor provided for the issuing of any capital stock to Noblesville township on account of the taxes sought

to be collected, nor has it made, or offered to make, any adjustment in relation to stock.

Upon the facts so set up in the return, we think it clear that the Midland Railway Company is not entitled to the money voted to the old company, and hence has no interest in the collection of the taxes. There is a clear distinction between appropriations by townships, by way of donations, and by way of taking stock in the company. The appropriation in controversy was voted under the act of 1869 (Acts 1869, Spec. Sess., p. 92, *et seq.*). That act, as all subsequent acts and amendments, recognizes the distinction. The first section of that act provided that, when a petition was presented to the county board, asking that a township should make an appropriation by "taking stock in or donating money to a railroad company," etc., it should be the duty of the board, etc. See, also, section 14 of the same act; also, Acts 1873, p. 185, section 2; Acts 1875, Reg. Sess., p. 121; Acts 1877, Reg. Sess., p. 111; Acts 1879, p. 46; R. S. 1881, sections 4045, 4058, 4069, 4070.

The people to be taxed have a right to determine in advance, and, by their petition to the county board and by their vote, to impose a condition, that the amount appropriated shall be by way of taking stock in the railway company. And when they have thus imposed the condition the money voted can not be bestowed upon, nor successfully demanded by, the railway company as a donation. *Faris* v. *Reynolds,* 70 Ind. 359; *Bittinger* v. *Bell,* 65 Ind. 445; *Irwin* v. *Lowe,* 89 Ind. 540; *Brocaw* v. *Board, etc.,* 73 Ind. 543; 1 Rorer Railroads, 125; 1 Wood Railway Law, 306, section 119.

The people of the township might be willing to vote money to be invested in the stock of the railroad company, and entirely unwilling to vote it as a donation. The stock represents the property of the corporation. The township, as a holder of it, would be entitled to vote in the meetings of the stockholders, and would thus, to some extent, have a voice in the government of the corporation and in the management of its property.

In the case in hearing the amount was not only voted to be invested in stock, but it was voted to be invested in the stock of the Anderson, Lebanon and St. Louis Railroad Company. No one has a right to demand the money without giving the stock of that company in return. The Midland Railway Company has no right to demand the money as a donation. It can not demand the money in return for stock, because it has no power to issue the stock of the Anderson, Ledanon and St. Louis Railroad Company; and it can not give its own stock in return, because neither the township nor the taxpayers thereof have agreed to receive its stock in lieu of the stock of the old company. They can not be coerced into such an agreement. To hold otherwise would be to hold that, although the township voted the money for one purpose, it may be taken and appropriated to an entirely different purpose. It may be observed, too, that the Midland Railway Company does not offer, nor has it proposed to offer, its own stock in return for the money.

For the reasons above stated, it must be held that the right to the money voted by the township did not and could not so pass to the Midland Railway Company, by the mortgage and foreclosure proceedings, as that it can recover it from the county or township, or demand that the tax shall be placed upon the duplicate and collected. The Midland company has no right in or to the appropriation that it can in any way enforce, because to accord it any such right would be to impose an obligation upon the township that it never in any way assumed, and to take its money without returning that for which it was voted.

This case is altogether different from the cases of *Scott* v. *Hansheer*, 94 Ind. 1, *Jussen* v. *Board, etc.*, 95 Ind. 567, and *Board, etc.*, v. *Center Township*, 105 Ind. 422. In those cases the appropriations were in the way of money donations. In such cases, the purpose of, and the consideration for, the donation is the building of the railroad through the township. In such cases, neither the township

nor the taxpayer has any interest in the corporation or its property; nor do they, by the donation, directly or indirectly contract for any such interest. When the railroad is built through the township, whether by the original company, or by another company that has succeeded to its rights, the whole purpose of the donation is accomplished. Not so here. Had the original company continued to be the owner of the road, and completed its construction, the township, by the payment of the amount voted and yet unpaid, would have been entitled to the amount in the stock of the company, and thus, as we have said, would have been a part owner of the corporate property, interested in the corporation, and entitled to a voice in the management of its affairs. Having reached the conclusion we have, it is not necessary for us to examine, critically, as to whether or not the mortgage was so specific in description as to cover the uncollected appropriation. As it does not appear, by anything shown in this case, that there is any person or railway company entitled to demand and receive the money, should it be collected, the court will not lend its aid to accomplish a useless ceremony and impose a useless and unjust burden upon the taxpayers of the township by ordering the tax to be placed upon the duplicate and collected.

The judgment is reversed, at the costs of appellees, and the cause remanded, with instructions to the court below to overrule the demurrer to appellant's return to the alternative writ.

Filed Jan. 30, 1886.

## On Petition for a Rehearing.

Zollars, J.—Counsel for appellees contend, with vigor and ability, that in this State, as elsewhere, there is no difference between an appropriation by a municipality by way of a donation and by way of taking stock in the railway company to which aid is voted.

That our statutes clearly recognize and create such a distinction is, in our judgment, so plain as to leave no reasonable ground for controversy.

The first section of the act of 1869 (Acts 1869, Spec. Sess., p. 92, *et seq.*), as stated in the principal opinion, provided that when a petition was presented to the county board, asking that a township should make an appropriation by *taking stock in, or donating money to, a railway company,* etc., it should be the duty of the board, etc.

The 14th section of the act provided that, after any part of the assessment should be collected, the board of commissioners might *take stock in the railway company* from time to time, in the name of the proper township, and pay therefor when the same was taken, etc. The title of the act was "An act to authorize aid to the construction of railroads by counties and townships *taking stock* in, and *making donations* to, railroad companies."

Section 1 of the act of 1872, which seems to be in force yet (R. S. 1881, section 4065), provides that in all cases where a township tax has been levied and collected under the act of 1869, which authorizes townships, by *taking stock in, or making donations to,* railway companies, to aid in their construction, and the right to the tax has been forfeited, the money shall revert, etc.

Another act of 1872 (R. S. 1881, section 4070) had relation solely to *stock* in railroad companies, issued for aid voted by counties and townships.

Section 6 of the act (section 4075, R. S. 1881) clothes the township trustee with authority to vote the *stock* held by the township, in all meetings of the stockholders of the railway companies by which the *stock may be issued.*

And still another act of 1872 (Acts 1872, p. 49, Spec. Sess.; R. S. 1881, section 4077, *et seq.*) has relation alone to stock in railroad companies, issued for aid voted by municipalities.

The title of the act of 1873 was "An act supplemental to 'An act to authorize aid * * by townships *taking stock in, and*

*making donations to, railroad companies,'* " etc.    Acts 1873,
p. 184.

The 1st section of the act provides (R. S. 1881, section
4068) that no tax shall be placed upon the duplicate of any
county for the purpose of *taking stock or making donations to*
railroad companies, etc., until the railroad shall be perma-
nently located in the township, etc.

The 2d section of the act provided that, where *stock was
taken or donations made by any township,* the collection of the
tax should be suspended until the railway company had ex-
pended in the township in the construction of its road an
amount equal to the amount of *money to be donated or stock
taken.*

The same distinction between taking stock in, and making
donations to, railway companies by municipalities is made in
the amendatory act of 1875. Acts 1875, p. 121; R. S. 1881,
section 4069.    And so in the act of 1877.    Acts 1877, p.
111, Reg. Sess.

The act of 1879 also provided that townships might vote
aid to railway companies by *taking stock in, and donating
money to,* such companies, etc.    Acts 1879, p. 46.

Section 3 of the act provides that no township, which shall
become the owner or holder of any *stock* in any railroad com-
pany, shall become liable for any debt or claim for work,
labor or material incurred in the building of the road, etc.
R. S. 1881, section 4064.

We have thus extended our references to the several
statutes, not for the purpose of placing a construction
upon them generally, nor of determining which, or what
portion of each, is now in force, but for the purpose of
showing by quoting some of the language of each, in sub-
stance, that they all not only very clearly recognize, but as
clearly establish, a difference between aid to railway com-
panies by municipalities by way of taking stock, and by way
of donations.    To say that they do not recognize and estab-

lish such a distinction, would be to convict the Legislature of the most useless and meaningless tautology.

Our cases have always recognized and enforced the distinction thus established by the statutes. For example, in the case of *Faris* v. *Reynolds,* 70 Ind. 359, cited in the principal opinion, the petition by the taxpayers to the county board was, that a tax might be levied upon the property of the township to be collected and invested in the stock of the railway company. It was held that, under the statutes, the taxpayers of the township might determine by their petition, and by their votes, whether the aid voted should be by way of taking stock in the railway company, or by way of donation. Amongst other things, it was said : "The people of a township, who vote this tax upon themselves, should have the right, and, we think, have the right under the law, to determine by their vote the manner in which the money shall be used, whether by donation of the money or by taking stock in the company."

In the case of *Bittinger* v. *Bell,* 65 Ind. 445 (458), cited in the principal opinion, the difference between aid to a railway company by way of a donation, and by way of taking stock therein, is fully recognized and asserted. And so, in the case of *Indiana, etc., R. W. Co.* v. *City of Attica,* 56 Ind. 476, which arose under a statute similar to those involved here, so far as concerns the point under discussion, it was held that there is a clear and material difference between aid to railway companies by municipalities by way of a donation, and by way of taking stock in such companies.

In the case of *Board, etc.,* v. *Indianapolis, etc., R. W. Co.,* 89 Ind. 101, it was held that the difference between an appropriation to a railway company, under the statutes above referred to, by way of a donation and by way of taking stock, is so marked, that section 18 of the act of 1869, providing for a forfeiture of the right to an appropriation voted, applied only to donations, and not to cases where the appropriation was by way of taking stock in the company.

We held in the principal opinion that the people to be taxed have a right to determine in advance, by their petition to the county board, and by their votes, that the appropriation shall be by way of taking stock in the railway company, and that, when they have thus determined, the amount can not be recovered as a donation by the railway company, nor by its successor, by whatever means or method there may be a successor. To that conclusion we adhere with much confidence in its correctness.

We yield our assent to the proposition, that where an appropriation has been lawfully made and completed, and a subscription for stock has been made in the manner provided by the statutes, such appropriation and subscription become a binding obligation upon the township. But it will not do to say that the township can be bound by an obligation which it has in no legal way assumed. In other words, the township can not be compelled to make a donation of the amount voted, where, as here, it has been voted upon the condition that the township shall receive therefor an equal amount of stock in the railway company. The township will be held to the terms of the appropriation, as expressed by the petition to the county board, by the vote of the people and by the final order of the board, and so, also, will the railway company.

The railway company must accept the appropriation as tendered by such petition, vote and order, or not at all. If the people have thus declared that the appropriation shall be by way of taking stock in the railway company, they have a right to the stock in return for the appropriation, and the railway company can no more coerce the payment of the money without the stock than can the township demand the stock without the payment of the money.

To hold otherwise would be to abolish all distinction between an appropriation by way of donation and by way of taking stock, which is so clearly established and recognized by our statutes and the cases, and to hold that, while the

township may prescribe conditions, it is powerless to have them respected by the railway company. In short, it would be to hold, as before stated, that the township may be held by an obligation which it has in no way assumed.

There is no reason why an appropriation by a township by way of taking stock in a railway company, when within the authority given by the statutes, and when the subscription is made, should not be considered a contract, just as a subscription for stock in such company by an individual is a contract. And, clearly, the township is entitled to all the protection that will be awarded to a private subscriber. The protection is not to be less because the people, in the aggregate, are concerned. Cook Law of Stock and Stockholders, section 99; *Shipley* v. *City of Terre Haute,* 74 Ind. 297; *City of Buffalo* v. *Bettinger,* 76 N. Y. 393; *Gray* v. *State, ex rel.,* 72 Ind. 567 (580); *People* v. *Dutcher,* 56 Ill. 144.

Mr. Cook, in his work above referred to, at section 100, states the following, which is sustained by reason and by the cases: "Under the same circumstances and conditions, and to the same extent as any other subscriber, a municipal corporation may compel a railway or other corporation to deliver to it stock to which the subscribers in general are entitled. It is entitled, like any other subscriber, to whatever it has subscribed for and paid for. Whatever would prevent an individual subscriber from enforcing such delivery will equally prevent a municipality in a like case. So it is said that a municipal corporation, or a subscriber, is in no better position than an individual subscriber in this respect. The cases plainly make no distinction as to the right to enforce delivery of stock between classes of subscribers, and the municipal subscriber has no more and no less right in respect thereto than other subscribers." To the same effect, see 1 Wood Railway Law, section 118.

The foregoing is, doubtless, the general rule applicable in all cases, unless in some way varied or modified by the stat-

utes authorizing the municipal aid. It is not modified or varied by our statutes.

It may be conceded, as contended by counsel for appellee, that it is not shown by the record that the Anderson, Lebanon and St. Louis Railroad Company has not been dissolved by a decree of a court. It may be, therefore, that that corporation still has a legal existence; but while the pleadings are not very definite upon that subject, we think that it is made evident by the record that abundant causes for such a forfeiture exist, and all that is necessary to end the existence of the practically defunct corporation is the judgment of a court. See 2 Wood Railway Law, p. 1171, *et seq.*; R. S. 1881, section 3930.

Undoubtedly, the purpose of the people of the township in voting the appropriation by way of taking stock, instead of by way of a donation, was to acquire such an interest in the corporate property as shares of stock represent, and such an interest and voice in the management of that property and the company's affairs as appertain to stockholders in such corporations. Stock in a railway company is property which a municipality may sell. *Shannon* v. *O'Boyle,* 51 Ind. 565; *O'Boyle* v. *Shannon,* 80 Ind. 159.

After the appropriation was voted, and after one-half of the amount had been collected and paid to the railroad company for a like amount of its stock, and before the remaining one-half had been collected, or placed upon the tax duplicate for collection, the Anderson, Lebanon and St. Louis Railroad Company abandoned the enterprise by an indirect alienation of all of its franchises, privileges, rights and property of every description, and, since the sale under the decree of foreclosure, has owned nothing of value to be represented by shares of stock. For all practical and beneficial purposes, so far as concerns Noblesville township, that railroad company ceased to exist with the sale of all its franchises, privileges, rights and property.

Possibly, that company still has such an existence that, if

there is no statute in the way, it might collect unpaid subscriptions for stock for the purpose of paying its debts, if it owes any which are yet binding obligations. Possibly, a receiver might be appointed for it who, if there is no statute in the way, would have power to collect enough of the unpaid subscriptions for stock to pay its debts, if it owes any which are still binding obligations.. Possibly, too, for the payment of the debts of that corporation, if it owes any which are yet binding obligations, and if there is no statute in the way, the collection of the tax in question here might in some way be coerced.

These are questions which we need not and do not decide, because they are not before us for decision. This is not an action by the Anderson, Lebanon and St. Louis Railroad Company, nor is it an action by a receiver appointed to close up its affairs. Nor is it an action by any one for the purpose of collecting assets with which to pay debts of that company. Although it is alleged that Cottingham, who joined with the Midland Railway Company as a relator, is a taxpayer of the township, the purpose of the action is very plain. It is in no sense an action by, in behalf of, or for the benefit of the Anderson, Lebanon and St. Louis Railroad Company, or its general creditors.

The action is the first step by the Midland Railway Company in its endeavor to compel the placing of the tax upon the duplicate; to compel the collection of the tax and the payment of the amount collected over to it, and leave the township and the taxpayers to hunt up and deal with the Anderson, Lebanon and St. Louis Railroad Company, and protect themselves as best they can.

It is averred in the return to the alternative writ, as stated in the principal opinion, that the mortgage, which finally swept away all of the property of that company, was executed in 1875. It is further shown in that return, that, after the execution of the mortgage, that company abandoned all work upon the road, and the property passed into the hands

of a receiver. Since then that company has had no property nor interest, so far as shown, which would require it to keep up its directory, or elect officers, or which would, in any way, interest it in doing so. So far as shown, it has no office in this State for the transaction of business, nor for any other purpose. It may yet have a bare legal existence, but it is evident that it would require more than an ordinarily skilful officer to find any representative of the company upon whom a writ might be properly served.

· To say that the township or the taxpayers must first pay to the Midland Railway Company, and then look to the old company for its stock, is, for all practical purposes, to say that the money must be paid without the stock for which it was voted.

It must be apparent, that if the Midland Railway Company shall succeed in its purpose to have the money collected and paid over to it, the township and the taxpayers will be left without anything in return for the amount paid, and without any sort of protection. Such a result is not to be allowed, unless imperatively required by settled rules of the law. Clearly, prior rulings will not be extended for the purpose of accomplishing such a result. On the contrary, those rulings should be, and will be, limited to the cases before the court in which they were made.

As we have stated, one-half of the amount voted was placed upon the duplicate and collected, and the amount paid over to the Anderson, Lebanon and St. Louis Railroad Company in return for a like amount of its stock. While the county treasurer was engaged in the collection of that portion of the tax thus upon the duplicate, Wilson and others, taxpayers of the township, brought an action to enjoin the collection of the portion assessed against them. The case was brought here on appeal. It was in the decision of that case that this court said that the alleged insolvency of the railway company, and its alleged inability to complete the road, did not render the tax invalid, or afford to the plaintiffs in

the case sufficient ground for enjoining its collection. *Wilson v. Board, etc.*, 68 Ind. 507.

The question and the facts involved in that case were different from those involved in the case before us. At the time that action was commenced the Anderson, Lebanon and St. Louis Railroad Company not only had a legal existence, but also, so to speak, a practical existence. And, although it was alleged that the company was insolvent, it was in the possession, as owner, of the road and all its corporate property. The tax, when collected, was to go, as it did, to the railway company which the taxpayers intended to aid in return for an equal amount of its stock. The shares of stock, as issued, represented so much of the corporate property, and, in the proportion that it bore to the whole amount of the stock, entitled the township to a voice in the management of the property and affairs of the company.

As applied to the case before the court, we adhere to the ruling in the case above, but do not think that it should be so applied or extended as to turn the case in hand in favor of the Midland Railway Company.

The only question involved in the case of *Board, etc.,* v. *State, ex rel.,* 86 Ind. 8, was whether or not the board of county commissioners had authority to make a third levy of taxes to raise the balance of the amount voted by the township in aid of the railroad company, the two prior levies having failed to produce the full amount, by reason of shrinkage in the value of the property in the township. It was held that the board had such authority; that it was its duty to exercise it, and that it could be compelled by mandate to perform that duty; and that, as the matter was one of public concern, any citizen of the township interested in the execution of the law might be the relator.

It was in that case that it was said, that when an appropriation of not exceeding two per centum of the taxable property of the preceding year has been lawfully made, such an appropriation becomes a binding obligation upon the

township, from which it is not discharged by any subsequent shrinkage in the value or destruction of any part of its taxable property.

When an appropriation is once fully completed by all the steps required by the aid laws, and the subscription for stock is made by the county board as required by those laws, it does become a binding obligation upon the township. And, in the sense that for the purpose of fulfilling the requirements of those laws, and subserving the public interest, the county board may, in a case like that last above, be compelled to levy a tax to meet an appropriation voted dy the township, that vote, and the preliminary steps leading to it, may be said to create a binding obligation upon the township. In the case last cited it was not necessary to decide whether or not a simple vote of an appropriation by a township, for the purpose of taking stock in a railway company, creates an obligation which the railway company can enforce by any sort of an action against the township, or creates such a right in the railway company as it may assign or mortgage. Those questions were not decided. What was there said must be limited to the exact case before the court. It should again be observed, that in that case the railway company, to aid which the appropriation was voted, owned the road and the corporate property, and that the taxes when collected would go to it in return for its stock.

The case of *Faris* v. *Reynolds*, 70 Ind. 359, is cited by counsel for appellee in support of their contention that, by the mortgage, its foreclosure, and the sale under the decree, the purchasers became the owners of the uncollected portions of the amount voted by the township. That question is not decided in that case. That was an action by taxpayers of the township to enjoin the collection of a tax levied for the purpose of aiding a railroad company by taking stock. In their petition to the county board the petitioners asked that the amount appropriated should be paid to the railroad company or its assigns. One of the grounds upon which they asked

that the collection of the tax should be enjoined was, that the railway company had transferred its interest in the tax to other parties. In disposing of that question it was said: "It is not seen that any one is injured by the assignment of the claim. If the township gets the stock, which it is entitled to do either before or concurrently with the payment of the money, whether paid to the railroad company or its assigns, it can not be material whether the money is paid to the railroad company or its assigns. If the assignment is valid, the taxpayer is not injured. If invalid, it harms no one, and furnishes no reason why the tax should not be collected." It will be observed that the validity or invalidity of the assignment was not decided, and that no question as to the right of the assignees to enforce payment to them was involved.

The case of *State, ex rel.,* v. *Board, etc.,* 92 Ind. 499, cited by counsel for appellee, is in every essential particular different from the case in hearing. In the first place, the railroad company, to aid which the appropriation was voted, owned the road, and hence, as already stated, stock in that company would represent the property, and entitle the township to a voice in the management of the affairs of the company. In the second place, the tax had been collected and was in the county treasury at the time the company assigned a portion of the amount which it claimed was due to it. In the third place, the county board approved of the assignment. And in the fourth place, before the action to compel the payment by mandate was brought, the railway company tendered the proper amount of certificates of its stock.

It was held that, in connection with the standing order that the amount collected should be invested in the stock of the company, the payment of previous amounts to the company, and the approval of the assignment of the portion to the bank, constituted a subscription to the stock of the railroad company within the meaning of the statutes. The case was

not one of an attempted assignment by a railroad company of an uncollected tax, or of an amount voted, but neither collected nor placed upon the tax duplicate, as is the case before us, but was one of an assignment after the tax had been collected, and after a subscription to the stock of the railroad company had been made by the county board as the statute required.

Neither is the case of *Board, etc.,* v. *Center Township,* 105 Ind. 422, either like or conclusive of the case before us. In that case, the appropriation was voted as a cash donation, and not by way of taking stock in the railway company. The amount had been collected and was in the county treasury. The trust deed specifically named the donation voted by the township and then in the treasury, as included within its terms. That the amount had been properly donated to the railway company was not questioned by counsel upon either side of the case. It was conceded in argument that the railway company claiming the money had succeeded to all of the rights of the old company in and to the donation.

The case before us must be disposed of and the rights of the parties settled upon the facts as developed by the record, and under the statutes in force at the time the mortgage was executed in 1875, as the Midland Railway Company can claim no rights except through that mortgage. The statute then in force, so far as is material here, was the act of 1869. Acts 1869, Spec. Sess., p. 92.

So far as is material here, the 14th section of that act was as follows: " Said board of commissioners may, after the assessment herein provided for, or any part thereof, shall have been collected, take stock in such railroad company, from time to time, in the name of the proper * * township, * * and pay therefor, when the same is taken, out of the moneys so collected as aforesaid," etc.

It is very plain from this section and the whole act that the simple voting of the aid by the township is not a subscription to the stock of the railroad company. That sub-

scription is to be made by the county board, which, for that purpose, acts as the agent of the township. Until it executes that power and authority there is no perfected subscription to the stock of the company. It is just as necessary that the board should act in that regard in order to make a perfected subscription to the stock of the railway company, as that it should act upon the petition provided for by the first section of the act, in order that there may be a valid vote by the township. When the subscription is thus made, and not before, the township becomes the owner of the stock. And although certificates of the stock thus subscribed for may not be essential to the ownership of the stock by the township, yet, we think that in case of such subscriptions by county boards for townships, such certificates may be demanded as a condition to the payment of the money. That conclusion seems to be sanctioned by the case of *Faris* v. *Reynolds, supra.*

The case of *City of Mount Vernon* v. *Hovey*, 52 Ind. 563, cited by counsel for appellee, is not authority in support of the contention that the vote of the township constituted a subscription to the stock of the railroad company. In that case, the common council acted for the city, as the county board was authorized to act for the township, by the 14th section, *supra*, of the act of 1869. In that case, the common council made a donation to the railway company, in behalf of the city, and issued the bonds of the city, which had passed into the hands of innocent holders.

When a subscription was made by the county board under the act of 1869, the township was brought into contractual relations with the railway company, and it thus acquired rights which it could enforce by action and which it could assign. While the ownership of the stock subscribed for by the county board under that act passed to the township in return for the money paid, it seems not to have been essential that the payment of the money should accompany the subscription for the stock in order that the township should

become the owner of such stock. The 17th section of the act provided as follows: "After the money authorized by this act to be appropriated shall have been levied and collected as aforesaid, and the subscription shall have been made on behalf of the * * township, * * the railroad company, for whose aid the same shall have been so levied and collected, having fully constructed the railroad, * * shall have the right to demand and have said money paid over according to the intent and meaning of this act," etc.

In the case of *Bittinger* v. *Bell, supra,* in speaking of the rights of railway companies under the above statutes, involved here, it was said: "It has been repeatedly decided by this court, * * * that, until the tax was levied and collected, and a legal and valid subscription had been made on behalf of the township, the railroad company did not have, and could not acquire, any legal right to or interest in the tax, which it could enforce by legal process."

In support of the statement thus made were cited *Board, etc.,* v. *Louisville, etc., R. W. Co.,* 39 Ind. 192; *Sankey* v. *Terre Haute, etc., R. R. Co.,* 42 Ind. 402; *Petty* v. *Myers,* 49 Ind. 1; *Jager* v. *Doherty,* 61 Ind. 528. Those cases all fully support the statement as above quoted. So, too, does the case of *Hilton* v. *Mason,* 92 Ind. 157.

Until the railway company occupies a position which will enable it to enforce, in some way, whatever right or interest it may have in an appropriation voted, such voted appropriation is not a chose in action in its favor which it can assign or mortgage.

A chose in action has been defined to be a thing which a man has not the actual possession of, but which he has a right to demand by action. *Ramsey* v. *Gould,* 57 Barb. 398.

In the case of *Dial* v. *Gary,* 14 S. C. 573, it was said that a chose in action embraces two ideas: first, a visible, tangible thing; and, second, the right to sue for and recover that thing. That a railway company has no right in or to an appropriation voted for the purpose of taking stock in such

company, which it can enforce by an action, or assign or in any way transfer to another, until the subscription for stock shall have been properly made by the county board, is recognized in the case of *City of Mount Vernon* v. *Hovey, supra,* and broadly asserted and ruled in the case of *Harshman* v. *Bates County,* 3 Dillon, 150; S. C. 92 U. S. 569.

In that case, an appropriation had been voted by a township, under a Missouri statute, for the purpose of taking stock in a designated railroad company. The county court, as was the board of county commissioners under the act of 1869, *supra,* was authorized to make the subscription to the stock of the railroad company in behalf of the township, and in pursuance of the vote. After the vote, but before the subscription by the county court, the designated railroad company was consolidated with another railroad company. After the consolidation, and without a further vote, the county court made a subscription to the stock of the consolidated company.

It was held that a vote of the people to take stock in the designated company did not authorize the county court to subscribe to the stock of the consolidated company, and that, therefore, the subscription to that company did not entitle it to the appropriation voted, and did not impose any obligation upon the township. The decision was placed upon the ground that the township had a right to insist upon stock in the railroad company for which the appropriation had been voted, and that they could not be compelled to accept stock in any other company.

In a note to the case by DILLON, J., and in distinguishing it from the case of *Nugent* v. *Supervisors, etc.,* 19 Wall. 241, it was said: "That case differs from the one above reported, in this: *There* the subscription to one of the constituent companies was *before* the consolidation, *here* it was *afterwards.* In this case there was nothing but a bare vote before the consolidation, and that, without more, creates no contract between the municipality and the railroad company," etc.

The decision by DILLON, J., as, also, his reasoning, so far as we have stated it, were approved by the Supreme Court of the United States upon the appeal. See, also, *City of Mount Vernon* v. *Hovey, supra.*

That case is also distinguishable from a class of cases cited by counsel for appellee, where county officers or courts, authorized to subscribe for stock in behalf of townships, have subscribed to the stock of a consolidated company instead of to the stock of the company to which the aid was voted by the township, and where bonds have been issued in payment for the stock, which, without showing upon their face any informality or infirmity, have passed into the hands of *bona fide* holders.

In the case before us, as we have seen, the tax has not been collected, nor has it been placed upon the duplicate for collection. There has been no subscription for stock made by the county board, nor in any other way. The case is, therefore, materially different from some of the cases above noticed, and, in this regard, materially different from other cases cited by counsel for appellee, where it was held that, after a subscription for stock has been made, such subscription is a chose in action in favor of the railway company, which it may assign and alienate.

When a subscription is made in the manner required by the statute, the township is brought into contractual relations with the railway company, just as is an individual by a subscription for stock.

We do not think it necessary to extend this opinion to comment much more at length upon the cases of *Scott* v. *Hansheer*, 94 Ind. 1, and *Jussen* v. *Board, etc.*, 95 Ind. 567. As stated in the principal opinion, those cases involved appropriations by way of donations, and not by way of taking stock in the railway company. They did not involve the right of a railway company to assign an uncollected aid voted for the purpose of taking stock in such company. Those were cases where the railway companies to which the

aid had been voted had been consolidated with other railway companies, and rest upon principles and rules of the law and statutes peculiar to such cases.

If it should be conceded that, by the simple vote of the township, a subscription to the stock of the Anderson, Lebanon and St. Louis Railroad Company was made, the Midland Railway Company would be in no better. position to demand the money. Upon such a concession, we should be led to a consideration of a statute discussed by counsel on both sides of the case upon the original hearing, and again pressed for consideration by counsel for appellants in their brief resisting the petition for a rehearing. It was not thought necessary to extend the opinion in the decision of the case by a consideration of that statute, and we give it attention now, because of the earnestness with which counsel for appellee urge their petition for a rehearing, and because counsel for appellants again insist that it is conclusive of the real question involved in the case.

In 1865 (Acts 1865, Reg. Sess., p. 66 ; R. S. 1881, section 3945 *et seq.*) an act was passed entitled "An act to authorize, regulate, and confirm the sale of railroads, to enable purchasers of the same to form corporations and to exercise corporate powers," etc. The act provides that, in case of a sale of any railroad by virtue of any mortgage, by foreclosure, etc., the purchasers thereof, etc., may form a corporation, etc., with power to operate the railroad, etc.

The 3d section of the act (section 3947, R. S. 1881) provides that " Such corporation shall possess all the powers, rights, privileges, immunities, and franchises in respect to said railroad * * purchased, * * * which were possessed or enjoyed by the corporation that owned or held the said railroad, previous to such sale. * * * And it shall have power, at any time after the formation of the corporation as aforesaid, to assume any debts and liabilities of the former corporation, and to make such adjustment and settlement with any stockholder * * or creditor * * of such former corpo-

ration as may be deemed expedient: * * * *Provided,* That all subscribers to the original stock of said railroad company, their heirs, executors, and administrators, shall (by the acceptance or adoption of this act by any purchaser or purchasers of any such railroad, as above provided) be released and discharged from all their unpaid subscriptions which shall not have been previously settled or arranged by agreement or compromise," etc.

Recognizing the fact that stock in an insolvent railway company, the property of which has been sold in a foreclosure or other judicial proceeding, is worthless, this statute was intended to protect subscribers by cancelling all obligations to pay unpaid subscriptions to such stock in all cases where there shall not have been an adjustment by agreement or compromise. In other words, the statute was intended to enact into a law the rule of fair dealing that no one shall be required to pay something for nothing.

In answer to one of appellee's contentions, it is enough to say that, in our judgment, it sufficiently appears from the record that the Midland Railway Company was incorporated under the above act, and, by virtue of the sale and such incorporation, became the owner of the property of the old company.

It is further contended on the part of appellee, that the statute is not applicable here, because it was enacted four years before any law was in existence authorizing townships to vote aid to railway companies, and that, therefore, the proviso in the section quoted could not have been intended to apply to a case like this.

The title of the act, as do its various sections, shows that it was not intended to subserve any mere temporary purpose. Its terms are general, and applicable to all cases arising subsequent to its passage.

The proviso was intended to, and does, protect all subscribers to stock in railway companies. That, at the time of its passage, there was no law authorizing municipal corpora-

tions to vote aid and become stockholders in railway companies, does not change the matter. They may now, and at the time Noblesville township voted the aid, they had authority to thus become stockholders.

If it be conceded that by the petition to the county board, and by the vote of the people, Noblesville township became a subscriber to the stock of the Anderson, Lebanon and St. Louis Railroad Company, it thus came within the terms of the above statute, and became entitled to its protection, as any other subscriber to stock in that company.

To hold that the proviso protects only such of the subscribers to stock as may have signed the articles of incorporation of the old company, or that it protects only individual and not municipal subscribers to such stock, would be to give to the act such a construction as to make it work inequality and injustice as between subscribers to stock. Such a construction is not required, but, on the other hand, is forbidden, both by the spirit and letter of the act.

In support of our conclusion that the act is applicable to subscribers who may become such under subsequent statutes, see *State, ex rel., v. Chapin,* 110 Ind. 272.

If we are correct in our construction of the above act and the proviso in the third section, and that we are we have no doubt, Noblesville township was released and discharged from the unpaid subscription for stock in the Anderson, Lebanon and St. Louis Railroad Company by the sale of all of its property under the decree of foreclosure, and the subsequent incorporation of the purchasers as the Midland Railway Company, there having been no settlement with the township as provided by the statute under consideration.

Such statutes ought to be given a fair construction, and, at the same time, such a construction as will protect the taxpayers. This is shown by the Iowa and other cases. There was a statute in Iowa which, for aught we know, is in force yet, which provided that, in the giving of aid to railway companies, the taxpayers were entitled to receive stock in

the corporation constructing the railroad, in the amount of taxes paid by each, etc.    Under that statute aid was voted to a railway company by the people of a township.    After the aid had been voted, the company to which the aid had been so voted, and before it had completed its road, sold and conveyed its unfinished railroad to another company.

In an action by a taxpayer to enjoin the collection of the tax (*Manning* v. *Mathews*, 66 Iowa, 675), the Supreme Court said : " The statute, in providing for the enforced contribution by taxation to aid the construction of railroads, contemplates that the taxpayer may become a stockholder, upon the ground, doubtless, that he ought not to be compelled to make contribution to a private enterprise, producing public benefits, wholly without compensation ; and that, as the railroad is a thing of public nature, producing public benefits in which the taxpayer shares, he ought to be in the position, as a stockholder, to have a voice and influence in preserving its existence and controlling its use, so as to secure the public benefits for which it was built.    The object of the statute was not primarily that the taxpayer should receive money or any other thing upon payment of his tax, but that he should receive the stock in the corporation building the road, to the end that he should have an interest in the road built.    His stock, if separated from the railroad, would be to him as any other property.    It can not be that the statute intended that he should be taxed to aid in the building of the railroad, and that, before his tax is collectible, the road could be alienated, and in its place the corporation could acquire bonds or other property, to be held for the benefit of the stockholders.    The statute does not contemplate that the taxpayer shall hold an interest as a stockholder in any property other than the railroad.    * * *    It can not, therefore, be that the statute will permit taxes to be collected when it becomes certain that the taxpayer can have no interest in the railroad, the very thing for which he was taxed.    It is plain, from the provision of the statute making the directors liable in double the par

value of the stock in case the road is encumbered beyond the prescribed limit, that it is the purpose of the statute to preserve the existence of the road in the corporation building it, and thus preserve the taxpayer's interest therein." The tax was held uncollectible. To the same effect are the cases of *Blunt* v. *Carpenter*, 68 Iowa, 265, and *Cantillon* v. *Dubuque, etc., R. R. Co.*, 35 N. W. R. 620.

We think that it may reasonably be said of our statutes authorizing townships to aid railway companies by way of taking stock therein, that they contemplate that the township, by becoming a stockholder, may have such an interest in the property of the corporation as shares of stock usually represent, and such an influence in the management of the affairs of the corporation as any other holder of a like amount of stock usually has; and that the act of 1865, last above referred to, was enacted upon the theory that when a railway company no longer owns the railroad, by reason of a judicial sale as provided in that act, an unpaid subscription to its stock ought not to be coerced, because the subscriber can not acquire an interest in the railway, nor have a voice in its management.

We are aware, of course, that these aid laws have been upheld as against constitutional objections urged against them, upon the theory that the railroad in aid of which the money is to be appropriated is a work of public utility, to be constructed for the public good.

So far as the constitutionality of the laws is concerned, it may be said, as is said in some of the cases cited by counsel for appellee, that there is no difference between an appropriation by way of a donation and by way of taking stock in the railroad company. But it does not follow by any means that there is no difference in any respect between aid by a township by way of a donation and by way of taking stock. As we have seen, our statutes and our cases clearly create and recognize a distinction, and both secure to the township rights, when the aid is by way of a subscription

for stock, which it does not have when the aid is by way of a donation. And both good morals and public policy sanction the extension of such protection to the township and taxpayers.

We repeat again, that this action is, in no sense, by the Anderson, Lebanon and St. Louis Railroad Company, nor by any one in its behalf, for its benefit, or for the benefit of its creditors.

The Midland Railway Company has, and can have, no right to the money should it be collected, for the reason that it claims and must claim through the mortgage, and that neither carried nor conveyed any interest in the aid voted which can be enforced in favor of that company; and for the further reason, that the act of 1865, *supra,* is in the way of an assertion of such right by that company. And while, as before stated, the record does not show that the Anderson, Lebanon and St. Louis Railroad Company has been dissolved by a judicial decree, we again state, as stated in the principal opinion, that it does not appear by anything shown in the record that there is any person or railroad company entitled to demand and receive the money upon the terms upon which it was voted, should it be collected.

We have examined with much care all of the cases cited by counsel for appellee and find nothing in any of them in conflict with what we here decide.

It would extend this opinion to an undue length to go into an examination and analysis of those cases. This is the only reason for not doing so. After a patient and laborious re-examination of the questions presented by the record, we are convinced that the conclusion reached in the principal opinion is correct, and that a rehearing should not be granted. The petition is, therefore, overruled.

We suggest that if the parties desire to remodel the pleadings, either by changes or by making them more specific, they ought to have leave to do so.

Filed July 10, 1888.