## POPE *v.* BOARD OF COM'RS OF LAKE COUNTY *et al.*

### (*Circuit Court, D. Indiana.* September 8, 1892.)

### No. 7,681.

1. RAILROAD COMPANIES—MUNICIPAL AID—SUBSCRIPTION TO STOCK—CONSOLIDATION.

A general statute authorizing the consolidation of railroad companies must be considered a silent factor in a subsequent contract of subscription made by a township to the stock of a railroad company, and a consolidation of such company with another company will not release the township, but will transfer its obligation to the new company.

2. SAME—CONTRACT OF SUBSCRIPTION—WHEN COMPLETED.

In Indiana a mere vote by a township of a given sum in aid of a railroad gives the company no legal right to or interest in the tax, until the same has been levied and collected and a valid contract of subscription made in behalf of the township.

3. SAME.

If it be conceded that such a vote gives a contingent interest which will pass to a new company by consolidation, such new company cannot assert any claim to the fund when it has not tendered its stock therefor, and has no stock which it may legally tender.

In Equity. Suit by Charles E. Pope, as receiver of the Chicago & South Atlantic Railroad Company, against the board of county commissioners of Lake County, Ind., the Chicago & Indianapolis Air Line Railroad Company, the Louisville, New Albany & Chicago Railway Company, and the Indianapolis, Delphi & Chicago Railroad Company, praying to be awarded the sum of $14,000 by way of subrogation. Heard on demurrer to an intervening petition filed by Cedar Creek and West Creek townships and William T. Singleton. Demurrer overruled.

*Charles E. Pope,* in pro. per.

*A. C. Harris,* for defendant.

BAKER, District Judge. This is a suit brought by Pope, as receiver of the Chicago & South Atlantic Railroad Company, against the above-named defendants, to be awarded, by way of subrogation, the sum of $14,000. The money so sought to be subrogated was raised by a tax voted by the legal voters of Cedar Creek and West Creek townships, in Lake county, Ind., to aid the Chicago & Indianapolis Air Line Railroad Company in constructing its line of railway into and through said townships. The fund so sought to be subrogated is in the registry of the court. On leave granted, Cedar Creek and West Creek townships and William T. Singleton, a taxpayer of each of said townships, have filed an intervening petition in this suit. Singleton intervenes on behalf of himself and all the other taxpayers of each township, who are too numerous to be made parties. The intervening petition seeks to have the fund awarded to the townships, or the taxpayers thereof, on the ground that neither the railroad in whose aid it was voted, nor the Louisville, New Albany & Chicago Railway Company, acquired the right to have the same paid to it. The receiver and the railroads have severally demurred to the petition. The facts, out of which the controversy arises, are substantially these: In 1874 Cedar Creek and West

Creek townships, in Lake county, Ind., voted to aid the Indianapolis, Delphi & Chicago Railroad Company by taking $14,000 of the stock of said company. After a small amount of the tax so voted had been collected, the railroad company became insolvent, and with its consent the aid so voted was canceled by the board of commissioners of Lake county, Ind., and the taxes collected were refunded to the taxpayers. Before the Indianapolis, Delphi & Chicago Railroad Company had consented to the cancellation of the tax, it had transferred all its franchises, property, and rights to the Chicago & South Atlantic Railroad Company, of which the plaintiff, Pope, is receiver.

In the year 1880 the same townships voted to aid the Chicago & Indianapolis Air Line Railroad Company by taking stock in said company to the amount of $25,000. Of the aid so voted, something over $18,000 was collected and paid into the county treasury of Lake county, Ind. This is the money now in controversy. After the aid was voted, but before it was collected, the Chicago & Indianapolis Air Line Railroad Company went out of existence by its consolidation with the Louisville, New Albany & Chicago Railroad Company, the two forming a new company, under the name of the Louisville, New Albany & Chicago Railway Company. There are three claimants to the fund: (1) The townships or taxpayers therein claim it because, as they allege, they voted it in aid of the Chicago & Indianapolis Air Line Railroad Company in consideration of stock in said company, which has never been issued or tendered, and cannot be, inasmuch as said company has ceased to have an existence. (2) The Louisville, New Albany & Chicago Railway Company claims it as the successor by consolidation with the Chicago & Indianapolis Air Line Railroad Company, and it also claims that it may furnish stock of the new consolidated corporation in lieu of stock in the Chicago & Indianapolis Air Line Railroad Company. (3) Pope, as receiver of the Chicago & South Atlantic Railroad Company, alleges that the Chicago & Indianapolis Air Line Railroad Company wrongfully procured the original $14,000 tax voted to aid the Indianapolis, Delphi & Chicago Railroad Company, to which it had become entitled, to be canceled, and the taxes collected to be returned to the taxpayers; and that by reason thereof the Chicago & South Atlantic Railroad Company, as the owner of the rights of the Indianapolis, Delphi & Chicago Railroad Company, through Pope, its receiver, ought to be subrogated to the respective rights of the Chicago & Indianapolis Air Line Railroad Company, and the Louisville, New Albany & Chicago Railway Company, in said fund, to the extent of $14,000.

Pope, as receiver, does not allege that he has any direct and primary claim to the fund, as having been voted to aid the Chicago & South Atlantic Railroad Company, or the Indianapolis, Delphi & Chicago Railroad Company, but his claim to $14,000 of the fund, if he has any, grows out of and rests upon the right of the Chicago & Indianapolis Air Line Railroad Company and the Louisville, New Albany & Chicago Railway Company to the fund in controversy. Hence, if the in-

tervening petition exhibits facts entitling the townships or the taxpayers thereof to the whole fund in the registry of the court, as against the Chicago & Indianapolis Air Line Railroad Company, and the Louisville, New Albany & Chicago Railway Company. the demurrer of all the defendants to the intervening petition must be overruled.

The sufficiency of the intervening petition hinges upon the legal effect of the following facts alleged therein: In the year 1880 the Chicago & Indianapolis Air Line Railroad Company was organized under the laws of this state to construct a railroad from Indianapolis to the west line of Lake county, Ind., and running into and through the townships of Cedar Creek and West Creek, in said Lake county. In the same year the taxpayers of said townships voted aid to the Chicago & Indianapolis Air Line Railroad Company in the sum of $25,000, that is to say, Cedar Creek township voted aid in the sum of $12,000, and West Creek township voted aid in the sum of $13,000, and the board of county commissioners placed upon the tax duplicate a tax to raise said sums of money. The board of county commissioners elected and determined, in accordance with the express wish of the taxpayers of said townships, to take stock in said Chicago & Indianapolis Air Line Railroad Company for and on behalf of said townships, and the taxpayers thereof, to the full amount of the tax paid to the company. No stock was ever issued or tendered by said railroad company; nor has said company to this day ever issued or tendered any shares of said stock, and the railroad company has put it beyond its power to so issue or tender any of said stock. In August, 1881, the Chicago & Indianapolis Air Line Railroad Company and the Louisville, New Albany & Chicago Railroad Company were duly consolidated into a new corporation under the name of the Louisville, New Albany & Chicago Railway Company, and from that time forward the said Chicago & Indianapolis Air Line Railroad Company became merged into said new company, and its rights, franchises, and property were merged in said new company, and it wholly abdicated its trust, and thereby became and was extinct, and ceased to exist as a lawful separate corporation; and thereby it became and was unable to carry out the condition on which said aid was voted, and it could not and did not issue any of its said stock to said townships or otherwise. The full amount of the capital stock of the Louisville, New Albany & Chicago Railway Company authorized to be issued by it has been issued, and is now owned and held by various persons; and no part of its said capital stock was set aside for the petitioners or otherwise, nor has said Louisville, New Albany & Chicago Railway Company ever issued or tendered, nor can it lawfully issue or tender, any of its stock for the sum voted in aid of said Chicago & Indianapolis Air Line Railroad Company. The consolidation which took place in August, 1881, was made without the knowledge or consent of the petitioners, or taxpayers of said townships, and was made before the money, or any part of it, now in controversy had been paid by the taxpayers to the county treasurer. The board of commissioners of Lake county always refused to donate said sums so voted to aid either said Chicago & Indianapolis Air Line Rail-

road Company or any other railroad company, and refused to order said money to be paid over otherwise than for the capital stock of the Chicago & Indianapolis Air Line Railroad Company.

The fund in controversy was collected from the taxpayers of Cedar Creek and West Creek townships, and belongs to them or to the townships, unless the railroad companies have acquired a legal right to the same. It is claimed by counsel for the intervening petitioners that the tax was voted to aid the Chicago & Indianapolis Air Line Railroad Company in consideration of receiving an equivalent amount of its capital stock, and because the company has become merged in a new consolidated corporation that it has ceased to be able to furnish its stock, and hence neither it nor the consolidated company has any right to the fund. On the other hand, it is claimed that, inasmuch as there was a statute in force at the time the aid was voted authorizing the consolidation, the consolidated company takes the place of the constituent company to which the aid was voted, with all its rights and subject to all its liabilities. It is true that there was a statute in force in this state at the time the aid in question was voted, authorizing the consolidation of railroad companies, and expressly providing that the consolidated company should acquire and possess all the rights, property, and franchises of the constituent companies, and be subject to their liabilities. Rev. St. 1881, §§ 3965–3979; *Paine* v. *Railroad Co.*, 31 Ind. 283; *Mt. Vernon* v. *Hovey*, 52 Ind. 563. Any person or corporation subscribing for stock in a railroad company in aid of its construction does so with the knowledge that such company may become merged into a new consolidated railroad corporation. It must be held to have been in the contemplation of such subscriber that such a consolidation might occur. The law enters as silent factor into every contract. The subscriber, by his contract, impliedly authorizes the railroad company for whose stock he has subscribed to consolidate with any other railroad company. He is not thereby released from liability, but, with his implied consent, he is brought into the same contractual relations with the consolidated company which he occupied with the company for whose stock he subscribed. *Hanna* v. *Railroad Co.*, 20 Ind. 30; *Railroad Co.* v. *Hunt*, Id. 457; *Bish* v. *Johnson*, 21 Ind. 299; *Railroad Co.* v. *Jones*, 29 Ind. 465; *Paine* v. *Railroad Co.*, 31 Ind. 283; *Railway Co.* v. *Powell*, 40 Ind. 37; *Railroad Co.* v. *Hendricks*, 41 Ind. 48; *Nugent* v. *Supervisors*, 19 Wall. 241.

It must be conceded, as a general rule, that a subscriber to the stock of a railroad company is released from his obligation to pay for the stock by a fundamental change of its charter. A radical change in the organization or purposes of the company may take away the motive which induced the subscription, and may also work a material change in the contract. For this reason it is held to release a subscriber from liability for his subscription. This principle, however, cannot be invoked to exonerate a subscriber from liability for his subscription where the change in the organization or purposes of the company has been made with the express or implied consent of the subscriber. The maxim, *volenti non fit injuria,* applies and rules in such a case.

The case of *Board Com'rs Hamilton Co.* v. *State*, 115 Ind. 64, 4 N. E. Rep. 589, and 17 N. E. Rep. 855, is earnestly pressed upon the court as holding a contrary doctrine. In this I think counsel are mistaken. In this case aid had been voted to a railroad company in consideration of a like amount of its capital stock to be issued to the township voting the aid. Before the tax was collected or the stock issued, a mortgage upon the property, rights, and franchises of the railroad company was foreclosed by decree of this court, and a sale was made by virtue of such decree to one Thomas C. Platt as the purchaser. The Midland Railway Company was organized, and became by purchase invested with the property, rights, and franchises so purchased by Platt. The Midland Railway Company claimed the aid so voted to the company to whose property, rights, and franchises it had succeeded. The court held that the Midland Railway Company had acquired no right to the aid, because the company to which the aid had been voted had become practically extinct, and could not issue the stock in payment for the aid voted, and because the township had not either expressly or impliedly agreed to accept the stock in the Midland Railway Company. As we have seen, when one subscribes for the stock of a railroad company, he thereby impliedly consents to its consolidation with another railroad company, and also impliedly agrees to accept the stock of the consolidated company in lieu of that of the constituent company.

These principles, however, are by no means decisive of the question presented by the intervening petition. It is expressly alleged that no part of the aid voted had been collected, and that no subscription had been made at the time of the consolidation. It has been repeatedly decided by the supreme court of this state that, until the tax was levied and collected, and a legal and valid subscription had been made on behalf of the township, the railroad company did not have, and could not acquire, any legal right to or interest in the tax. *Board Com'rs Hamilton Co.* v. *State*, 115 Ind. 64, and cases cited on page 84,[1] 4 N. E. Rep. 589, and 17 N. E. Rep. 855. Until the tax is levied and collected, and a legal and valid subscription has been made on behalf of the township, no contract relation exists between the township and the railroad. It is nothing more than a proposition on the part of the public, and can only be made binding and effectual by such mutual acceptance as gives rise to a contract. At the time of the consolidation the constituent company had no right to the aid. At most, it had a mere contingent possibility. It is not necessary to decide whether it was such a possibility, coupled with an interest, as could pass to the consolidated company. If it did pass, still under the facts averred it seems clear that the consolidated company has not put itself in a position to assert any legal or equitable right to the fund. It has not tendered its stock, nor done, so far as the petition discloses, any act entitling it to claim the money in controversy. The reasoning of the court in the case of *Board Com'rs Hamilton Co.* v. *State*, *supra*, would seem conclusive of the proposition in hand.

[1] See 17 N. E. Rep. 862.

It is settled by the case of *Centre Tp.* v. *Board, etc.*, 70 Ind. 562, where the right of the railroad company to the aid voted never existed or has ceased to exist, that the money belongs to the township or the taxpayers. In either case, the petitioners, if the facts alleged in their petition shall be found to be true on the trial, ought to prevail. The demurrer to the intervening petition presents no question of estoppel by judgment or decree. If all that is said by counsel in argument on that subject is good law, about which the court expresses no opinion, still the petition discloses no facts presenting any such question. The sufficiency of the petition must be determined upon its allegations, and not upon matters *dehors* the petition. From these considerations it follows that the demurrer to the intervening petition ought to be overruled, and it is so ordered.